RICHARD IGLEHART
vs.                                    July Term, 1848.
EDWARD LEE AND CHARLES F. MAYER.

[CHANCERY PRACTICE—INJUNCTION.]

To a bill for an injunction, restraining execution of a judgment at law, the defendant filed a general demurrer, which was overruled by the Chancellor, and the injunction made perpetual; upon appeal, this order of the Chancellor was reversed, and the cause remanded for amendment in order to make necessary parties. HELD—That when the bill is amended, the defendant will have a right to answer it.

Where the party against whom a judgment at law has been rendered, did not, before or at the time of its rendition, know of facts which would have constituted a valid defence at law, so that he could not then have availed himself of them, he will be entitled to relief in equity against the judgment.

[The original bill in this case was filed by Richard Iglehart, on the 2d of October, 1838, and states, in substance, that on the 28th of September, 1829, a writ of *fieri facias* was issued out of the Court of Chancery, on a decree passed in a cause, in which Caroline Duncan and William B. Duncan were defendants, and was directed to complainant, the then sheriff of Anne Arundel county. That when the writ came to his hands, the defendants therein were infants, and Joseph Robinson was their guardian; that said infants were possessed of a farm in said county, which their said guardian, under the direction of the Orphans Court, rented to Edward Lee, upon the terms that he was to pay as rent to said guardian, one-third part of the annual crop of tobacco and grain; that though the crops had usually been sent to Baltimore and sold before division, yet, by the express terms of the renting, one-third thereof belonged to said infants, on the ground, and their guardian had the right to come on the farm and receive the rent in kind as soon as the crops matured. That there was at the time a matured crop of tobacco on the farm, raised by Lee, under this renting, one-third of which belonged to the infant defendants in the writ, upon which complainant levied the writ. That his right to make thi- levy being questioned, he afterwards, on the 27th of

October, 1829, at Lee's request, executed to him a written agreement to save him harmless upon paying over to complainant the proceeds of sale of said third part of said crop ; that Lee thereupon took the tobacco to Baltimore, sold it, and paid over to complainant the proceeds, which he paid to the counsel for the plaintiffs in said writ in satisfaction thereof.

That on the 9th of October, 1829, before he executed said written agreement, or received the proceeds of sale, Robinson commenced an action of trespass against him in Anne Arundel County Court, for making said levy ; that at October term, 1833, this action, by consent of parties and under rule of court, was referred to two referees ; that pending this reference, Robinson, to sustain the issue on his part, produced the affidavit of Lee, which, with other testimony, was laid before the arbitrators, and the whole case being fully investigated by them, they, on the 21st of October, 1834, returned an award in favor of complainant, and directed a judgment of *non suit* to be entered in said case, which was done by said County Court on the 29th of the same month, no exceptions to the award having been filed by Robinson.

That pending this action of trespass and before the reference thereof, to wit, on the 10th of August, 1832, Robinson knowing that Lee held complainant's said written agreement, commenced an action in said County Court against Lee, to recover the money in the form of rent, which Lee had so as aforesaid paid to complainant, which cause came on for trial at the October term, 1834. That though Lee knew of the decree and *fieri facias*, and the levy aforesaid, and the pendency of said action of trespass, and had himself given testimony therein, which formed a perfect defence in a suit against him, Lee, yet he omitted to plead, or adduce in evidence, or insist upon said matters in defence, and wholly omitted and neglected to give complainant notice, or call upon him, or give him an opportunity of urging said matters in defence of said suit, and at the trial actually abandoned the defence he had made, and consented to a verdict and judgment against him, waiving at the same time a decision of the court; that the action could not be sus-

tained against him in the form in which it was brought; all of which the said Lee did without notice to, or conference or consultation with, complainant or his counsel, though he knew he held complainant's written agreement aforesaid, and looked to complainant to be ultimately and solely affected by and responsible for his said acts in the premises.

That Lee, at the time he agreed to waive the decision of the said court in his favor, and submit to the verdict and judgment against him, did so in pursuance of an agreement and stipulation with Robinson, and obtained the latter's express covenant and assurance that he, Lee, should in no way be bound by said judgment, or injured or affected thereby, or ever called upon to pay a farthing of the amount for which it was rendered, but that the same should be instantly entered satisfied on the records of the court, which was accordingly done by Robinson on the same day it was rendered, without ever demanding from Lee one cent on account thereof, and the latter has, in fact, never paid anything on account of the same, or been in any way affected, injured or damnified thereby, or by any claim that has ever been brought against him on account of said one-third of said crop of tobacco, or the value of the proceeds of the sale thereof.

The bill further charges, that pending the suit of Robinson against Lee, the latter well knew of the matters and facts which constituted a valid defence thereto, he having himself sworn to them in the affidavit before referred to, and if they were not susceptible of proof in a court of law in consequence of the lease of the farm not being in writing, or of there being no witnesses to the terms thereof set out in his affidavit, and which made one-third of said crop of tobacco the property of the aforesaid infants at the time it was levied on, it was competent to, and incumbent on, Lee, and was his legal duty to complainant to have filed a bill of discovery against Robinson, to compel him to disclose, under oath, the aforesaid matters and facts of which, from their nature, he must have been cognizant, to be used as evidence in defending said cause, and that Lee, thus knowing of a good and substantial defence to

said cause, and omitting to adduce proof of it, or, in the absence of other proof, to file a bill of discovery as aforesaid, cannot, under complainant's said written agreement, nor will he be permitted by a court of equity to charge complainant with the effects of any judgment recovered against him in consequence of such omission, or otherwise, even had he been damnified thereby; and that the said conduct of the said Lee in the premises is a fraud upon complainant's rights, against the effects of which a court of equity will grant relief.

That it was a part of the agreement between Robinson and Lee, that after the judgment was rendered against the latter, and satisfaction thereof entered, (all of which was done for the sole purpose of forming untrue record testimony against complainant,) he, Lee, should sue complainant on his said written agreement, and the proceeds of the suit go to the benefit of Robinson, and that to sustain the same at the time the said untrue record evidence should be adduced by Lee, to show he had suffered· damage within the meaning of complainant's said agreement. That in pursuance of this understanding and agreement, Lee, on the 4th of April, 1835, commenced suit against complainant in said County Court, on said written agreement, setting out in his declaration as a breach thereof the recovery of the judgment against him by Robinson, and most untruly averring that he had paid to the latter the sum of money for which the same was rendered. That this cause so commenced was entered on the docket for the use of Charles F. Mayer, the counsel for Robinson, and came on for trial at the October term, 1837, of said County Court, when Lee adduced as evidence the said written agreement, proved the sum for which the one-third of said crop of tobacco sold, and produced the record of the judgment against him in favor of Robinson, with the entry of satisfaction thereof as the only evidence to show his right of action, and the extent to which he was entitled to recover, and a verdict and judgment was thereupon rendered against complainant for the sum of $292 09, with interest from the 24th of October, 1837, and costs, in favor of Lee for the use of said Mayer.

43*

That, at and up to the time of the trial of this cause, complainant had no knowledge of the aforesaid arrangement between Robinson and Lee for entering the judgment against the latter, satisfied upon the record, or of Lee's having assented to the same, or that he had not paid the amount thereof to Robinson; that had he known of these facts, he had no means of proving them in a court of law, if, indeed, such proof could have been admitted to contradict the record evidence aforesaid.

The bill then charges that Lee is threatening to issue execution upon the judgment so as aforesaid rendered against complainant, and prays for an injunction restraining the same, and for general relief, and makes said Lee alone a defendant.

The agreement of Iglehart, dated the 27th of October, 1829, on which suit was brought by Lee, is exhibited with the bill, and is as follows:

"Whereas, a crop of tobacco, packed in hogsheads, in the possession of Mr. Edward Lee, one-third of which said crop has been levied on by me by virtue of a writ of *fieri facias*, issued out of the High Court of Chancery against Caroline Duncan and others, at suit of Perry Townshend and wife, and whereas, the said crop of tobacco has been sold and disposed of by the said Edward Lee, who is willing to pay over to me, as sheriff of Anne Arundel county, the proceeds as of one-third in amount of said sales, provided he shall be made safe and indemnified in the same from all loss or suits by any person or persons setting up a claim to the one-third part of the sales of said crop of tobacco. Now, I, Richard Iglehart, sheriff of Anne Arundel county, do hereby agree to indemnify and save harmless, the said Edward Lee, from all loss or damage whatsoever, either at law or in equity, against all and every person or persons claiming or to claim any part, share or interest in the said one-third part of said crop of tobacco, upon his paying over to me the proceeds of the one-third of the sales of said crop."

The affidavit of Lee, referred to in the bill as having been laid before the arbitrators in the trespass case against Iglehart, as also the declaration in said case, and a copy of the docket

entries of the judgment recovered by Lee against him, are filed as exhibits with the bill.

In this affidavit, made on the 2d of September, 1833, Lee swears that he rented the land of which the late William Duncan died seized, for the last seven years, from Robinson, as guardian of William B. and Caroline Duncan. "That the terms upon which he rented were, that Robinson should receive one-third of the annual crops of tobacco and grain, which have usually been sent to Baltimore to be sold, and the proceeds divided between deponent and the said Robinson. That by the terms of the contract the said Robinson had a right to receive his part of the crops in kind, and was not obliged to wait for the sales. That during the second year of deponent's tenancy, as well as he recollects, in the latter part of the summer or early part of the autumn, Richard Iglehart, then sheriff of Anne Arundel county, levied on the land and on the tobacco raised the previous year, to wit: Eleven hogsheads of tobacco to satisfy a *fieri facias* issued, as deponent understood from Iglehart, out of the Chancery Court, at the instance of Perry Townshend and wife, against William J. B. Duncan and Caroline Duncan. That the said tobacco was, by permission of said Iglehart, sent to Baltimore by this deponent for sale, was sold, and one-third of the proceeds paid to said Iglehart."

The Chancellor granted the injunction as prayed, and after the return of the subpœna, an attachment was issued against the defendant at December term, 1838, returnable to the March term, 1839, which was then returned attached, and an order, *pro confesso,* passed, requiring the defendant to appear and answer, plead or demur to the bill, on or before the 4th day of the following July term. Under this order the defendant appeared on the 12th of July, 1839, and filed a general demurrer to the bill, in which the complainant joined. The cause was then continued until March term, 1844, when the defendant, by his counsel, submitted the demurrer to the Chancellor for decision, asking leave "to answer in case the demurrer should be decided against him." At the same term, the Chancellor, *(Bland,)* passed a decree overruling the demurrer and making the injunction perpetual.

From this decree the defendant appealed, and the Court of Appeals, *(Archer, C. J., Dorsey, Chambers, Magruder and Martin, J.,)* at its December term, 1845, reversed the decree of the Chancellor, and remanded the cause, *Magruder, J.,* delivering the following opinion of that court.

"In this case the bill of complaint does not bring before the Court the necessary parties, and for this reason the decree must have been reversed and the bill dismissed but for the act of 1818, *ch.* 193.

"Before a final decree, the necessary parties must be made and have an opportunity of showing why the complainant should not obtain the relief which he seeks. We shall, therefore, remand the case to the Chancery Court.

"When the bill is amended, the defendant will have a right to answer it."

The cause being reinstated in Chancery, the bill was amended by making Charles F. Mayer, the party for whose use the judgment against Iglehart was entered, a party defendant, who appeared and filed his answer on the 27th of March, 1847.

This answer avers, that he knows nothing of the levy on the tobacco spoken of in the bill, but does know that Robinson asserted his right to one-third of said tobacco, or of the value or proceeds thereof, and contended that the infants of whom he was guardian, were not legally nor equitably entitled to said one-third, especially as he, in his guardian's accounts, had accounted for the full rent of the farm whence the said crop issued. That defendant believes Robinson was right in all these, his pretensions, and that the levy spoken of was an unjust proceeding, and virtually, if not technically, a trespass on his property, either directly or through the legal or ostensible rights of the tenant, Lee.

He admits that Robinson sued Iglehart in trespass, and that the case was referred to referees, who awarded that the former should be non-suited, but he denies that this award was made on the merits, but was founded on the position that Robinson had no such property specifically in the tobacco as entitled him to bring trespass for it, and that the result of this decision

was, that the only priority in the matter was between Robinson and Lee, and that the latter was answerable to the former for the one-third of the proceeds of the tobacco, or to render him that third in kind. That in this view, which is founded on what transpired, as the defendant believes, and, as he asserts, on the remembrance he has of the proceedings, the decision of the referees formed no defence for Lee against Robinson in the latter's suit against him, and concluded nothing upon their relative rights and liabilities.

That he knows not what occurred in the course of the trial of Robinson's suit against Lee, but he maintains that the latter was justly and legally liable to the former for the amount for which the judgment was rendered, as being for the proceeds of the former's one-third of the tobacco raised from the farm, and that the judgment was therefore fairly rendered, and none of the considerations objected by the bill would have availed either equitably or legally to prevent a judgment or stay its execution. He knows nothing of any agreement between Lee and Robinson for rendering judgment in said suit or for afterwards having a suit prosecuted by Lee against Iglehart on the indemnification agreement referred to in the bill, nor does he know whether Lee actually satisfied the judgment obtained against him by Robinson, but he denies that Iglehart is concerned to inquire whether said judgment was satisfied actually by Lee, inasmuch as in any event Iglehart's agreement bound him to satisfy it himself, and thus truly, according to the terms and honesty thereof, to indemnify and save harmless the said Lee. He denies that Iglehart is entitled to any relief against his own act in allowing a verdict and judgment against him, when if he had any defence, (which is denied he either legally or morally had,) the law and the occasion of the trial put all the means and materials of defence at that period in his power, and especially since the judgment is only for the amount he was bound to pay to Lee or to Robinson, if the latter had, in equity, claimed the benefit of the former's claim against Iglehart, under the agreement for indemnification.

He denies that Lee's judgment against Iglehart was recov-

ered only ostensibly for this defendant, and really and in truth for Robinson, but avers that the claim on said judgment is entirely and truly the property of this defendant, and his on valuable considerations, and that the whole avails thereof are to go and accrue to him.

The answer of Lee, which was filed in July, 1847, admits that he rented the land from Robinson, which he understood and believes belonged to his, Robinson's wards ; that the rent agreed upon was that he was to pay one-third of the crops raised on the land to Robinson, in specie, but the usual course of their dealings was for Robinson to take his third of the grain on the land in specie, and his third of the tobacco in money, after the whole crop was sold.

He admits that in September, 1829, Iglehart, as sheriff, professed to levy the execution described in the bill, on one undivided third of the crop of tobacco which he had made as tenant on said land, but he denies that there was or could be any legal levy thereon ; that he nevertheless sold the same, and after the sale, both Robinson and Iglehart claiming the proceeds and threatening to sue him for one-third thereof, he, at the latter's instance, who urged him by misrepresenting the true facts of the case, paid over to him the proceeds of said third, he assuring respondent it was right and proper to do so, and giving him the bond of indemnity referred to.

He says he does not know or believe he was ever informed of any of the particulars of the suit or trial, or proof on the trial between Robinson and Iglehart, or the award therein or the determination thereof.  He does not recollect of ever having made the affidavit filed with the bill, but from its examination he believes it is correct, and the facts therein stated to be true ; that he has no knowledge, recollection or belief as to the object of obtaining said affidavit, or who assented to it or obtained it, or the use to which it was applied, or that it was ever offered in evidence, or the effect of it if ever used.

He admits he was sued by Robinson for the rent which he so paid to Iglehart, and that judgment was obtained against him therefor.  He denies that he knew any more of the said

decree or execution thereon than the statements he received from complainant, most of which he has since found were erroneous and untrue.

He denies that he ever knew of the pendency of the suit of Robinson against complainant, or of his having ever given any testimony therein. He does not know or believe that his attorney ever omitted to plead or adduce evidence in the case against him by Robinson, or neglected to give complainant notice thereof, or an opportunity of defending the same, or that he abandoned his defence therein, or consented to a verdict or judgment against him, or waived any decision of the court upon any points presented to it pending said trial. That he left the whole matter to his attorney, with directions to save him harmless from twice paying this rent, and though he cannot positively aver, yet he believes and insists that Iglehart, through his attorneys or otherwise, knew all that took place in said cause between Robinson and respondent at the time it took place, the object of said suit, his own interest therein, had all the means of defending the same, and yet refused to aid and assist respondent in defending the same or to defend it himself, at his own cost, as in law and conscience he was bound to do, and as respondent wished him to do. He denies that Robinson's action could not be maintained against him. He does not know whether Robinson knew that respondent held this indemnity or not when he brought suit against respondent.

He admits that he always did look to Iglehart's agreement as his indemnity, and held him responsible thereon for his acts in the premises, and supposed, as Iglehart knew of this controversy, he would retain the money until all the suits were settled, or have taken security and indemnity if he had paid it away, and if respondent's attorney did not give special notice to complainant, it was because he believed it unnecessary, as before stated, or because he and his attorney supposed Iglehart had the money ready in hand to await this decision, and had no interest whatever in the suit between Robinson and respondent.

He denies that he ever did, to the best of his knowledge, in-

formation or belief, before or at the time the judgment was entered against him in favor of Robinson, agree with the latter, or enter into any stipulation with him in relation to said judgment, that it should be released, or that respondent should not be injured or affected or bound by it, or ever called on to pay it, or that it should be instantly entered satisfied; and he denies that it was in fulfilment of any such prior agreement that it was entered satisfied, or that it was so entered on the day it was rendered. He denies that he ever did know, pending said suit against him by Robinson, of any good or valid defence thereto at law or in equity, or that he ever knew of any matter in relation thereto of which complainant was ignorant.

He admits that he never did pay the said judgment to Robinson, and he believes that his attorney agreed, after said judgment was rendered against him, to give to Robinson or any one else he should designate, the said indemnity of complainant, if Robinson would enter said judgment previously obtained, satisfied; but he does not know this to be the case, nor does he know how long after the rendition thereof it was before it was entered satisfied. On consultation with his attorney, neither he nor respondent has any recollection whatever of what did take place before, at the time, or after that judgment, but he is advised, and insists, that after complainant had refused or neglected to defend said suit, or to pay the same, he having, as before stated, the means in his own hands, placed there by respondent for that purpose, and your respondent was about to be compelled twice to pay this rent, because of the failure on the part of complainant to comply with his aforesaid contract, it was defendant's right to prevent the perpetration of this fraud by complainant, and to sue, or assign to any one to sue, said indemnity, and he believes that under these circumstances his attorney might, as he had authority to do, have agreed that if said judgment was struck out, he would let Robinson have any benefit he could have for said indemnity.

He admits that suit was instituted in his name, for the use of Mayer against complainant and the recovery of the judgment filed, but does not know what proof was offered therein,

but supposes the two attorneys of complainant can prove the same, but he does not know, nor has he reason to believe, that Mayer was counsel for Robinson.

He denies that the only objects of entering the judgment against him, and the satisfaction thereof, was to form untrue record evidence to be adduced against complainant in a suit to be thereafter brought, and at that time agreed to be brought by respondent against complainant. That he does not know what evidence was adduced, or what proceedings took place at the trial of the suit for the use of Mayer, because he was not made acquainted therewith.

He admits that he never did pay in money the judgment so recovered against him by Robinson, or suffer other damages than some costs and expenses, but when about to be compelled to pay the same after its rendition, and thus to pay the said rent twice, he did agree that Robinson might use the indemnity which complainant gave respondent to recover his debt of complainant, if Robinson would enter this judgment satisfied, which he or his attorney did.

He admits he is not to receive any benefit from the judgment against the complainant, which if ever paid, he believes, though he does not know, will go to the use and benefit of Robinson for the rent he has lost in the value of said tobacco, which complainant illegally and improperly received from respondent, and prevented him from paying as was right and proper he should do, to Robinson.

He avers that the trial of Mayer's cause against complainant did not take place until years after the two other suits had been decided, and after all the facts and statements on which complainant now pretends to rely had taken place, all of which were, therefore, well known to him and his attorneys, and if of any avail, could have been offered in evidence, either at law or by proceedings in equity at the said trial, yet complainant neglected to use them, and permitted judgment to be recovered against him without summoning a witness, and defendant insists that as these defences were not made at law, complainant is forever precluded from opposing said judgment.

VOL. IV—44

He insists that the trespass case, on which the *non-suit* was entered, was irregularly decided, and not upon the merits, and could not preclude Robinson from holding respondent liable for the rent. He denies all fraud with which he stands charged, avers that the course taken by him was fair and just, and requisite to protect himself from the fraud and imposition about to be practiced upon him by complainant, by compelling him to pay the same debt twice, and pleads the statute of limitations to the claim set up by the bill.

———

[After the filing of these answers, a motion was made to dissolve the injunction, upon the hearing of which, the Chancellor delivered the following opinion, on the 5th of July, 1848.]

———

THE CHANCELLOR:

That the bill in this case states facts, which, if proved, or admitted, constitute a good defence against the judgment at law seems too clear for controversy. The Court of Appeals must have thought so, as otherwise, instead of remanding the record for amendment and further proceedings they would have dismissed the bill.

The question then is, have the answers removed the equity of the bill? I think not. That of Mr. Mayer cannot have that effect, because he does not profess to know, and could not know the circumstances upon which the equity is founded. The answer of the defendant, Lee, is vague and unsatisfactory, and with every disposition, as is manifest, to get rid of the injunction, leaves many of the material facts of the bill unanswered. There is a good deal of confusion in his statement of the understanding and terms upon which the judgment at suit of Robinson against him was rendered. He admits that the judgment was entered satisfied, though he paid no part of it, and states that neither he nor his attorney, has any recollection of what took place at the time of or after its rendition. He denies that, according to the best of his knowledge, information or belief, he made any agreement with Robinson in relation to said judgment, either prior to or at the time it was entered, to the

effect that it should be released, &c., but he confesses, as before stated, that it was released without his paying one dollar in satisfaction of it, and he also admits, that after the judgment was rendered, his attorney agreed to give up to said Robinson, or any one else he should designate, the contract of indemnity executed by the complainant, Iglehart, if Robinson would enter the judgment satisfied. The denial of the previous agreement, it will be observed, is not positive, whilst facts are admitted which have a powerful tendency to prove such agreement.

Robinson, according to the answer, had a valid judgment against Lee, fairly recovered, and of course, capable of being enforced by execution, and yet without any previous agreement upon the subject the answer asserts that this judgment was entered satisfied, though not one cent was paid in its discharge, the plaintiff, Robinson, being content to rely upon the issue of a suit upon Iglehart's contract of indemnity. This statement certainly is extremely improbable, and cannot obtain credit upon this motion, unless vouched for by the most unequivocal assertion in the answer, which assertion has not been made. Before a suit could be maintained upon the contract of Iglehart to indemnify Lee, it was necessary to show that the latter had been damnified, and the suit of Robinson against Lee, the recovery in that suit, and the entry of satisfaction without payment, bear strong marks of contrivance and of a purpose to manufacture evidence upon which proceedings against Iglehart could be founded.

The whole machinery appears to have been put in motion to create a fictitious cause of action againt Iglehart, and certainly should not be allowed to succeed, unless there is some rule of law or of equity which forbids the interposition of this court. My opinion is there is none such. The complainant states expressly, that he did not know of these defences before or at the time of the rendition of the judgment against him, and, therefore, even if they would have constituted a valid defence at law, he could not have availed himself of them. This brings his case within the principles settled by the Court of Appeals, in the cases of *Gott & Wilson* vs. *Carr*, 6 *Gill & Johns.*, 309, and

*Dilly & Heckrotte* vs. *Barard*, 8 *Gill & Johns.*, 171. I shall, for these reasons, sign an order continuing the injunction.

———

[The commission to take testimony was subsequently returned unexecuted, and the cause was, at December term, 1849, submitted for final decision, when the Chancellor passed the following order.]

———

THE CHANCELLOR:

This cause having been submitted on the part of the complainant during the sittings of the term, is now laid before the Chancellor without argument. And this court being of opinion, for the reasons stated on the 5th of July, 1848, as the grounds upon which the order of that date was passed, that upon the bill, answers and the other proceedings then appearing in the cause, the complainant was entitled to be relieved against the judgment mentioned in the proceedings, and the commission to take testimony then outstanding having been returned unexecuted. It is, thereupon, this 17th day of January, 1850, by John Johnson, Chancellor, and by the authority of this court adjudged, ordered, and decreed, that the judgment in the said proceedings mentioned at the suit of Edward Lee, use of Charles F. Mayer, the defendants in this cause, against Richard Iglehart, the complainants, recovered in Anne Arundel County Court, at the October term thereof, in the year 1837, be, and the same is hereby perpetually enjoined. And it is further adjudged, ordered and decreed, by the authority aforesaid, that the complainant recover his costs against the defendant in this case, to be taxed by the Register.

———

[From this decree the defendant, Mayer, appealed; which appeal is still pending.]

———

· J. J. SPEED, for Complainant.
A. RANDALL, for Defendants.