HARRISON DUNHAM AND HIRAM AIKENS *v.* SOLOMON DOWNER AND DANIEL AIKENS.

[IN CHANCERY.]

*Principal and surety. Judgment. Chancery.*

The payment of interest in advance upon a debt, or the purchase by the debtor of the creditor, at the latter's request, of property at a stipulated price, and the execution by the former to the latter of his note therefor, secured by mortgage, are, either of them, a sufficient consideration to support a promise to delay the collection of the original debt; and such a promise upon either of these considerations, when made by the creditor to the principal, will discharge the surety; *Marshall* v. *Aiken et al.,* 25 Vt. 328.

In cases of a debt on specialty, or of record, where the undertaking of the surety is on the face of the contract *direct* and not merely collateral, neither

Dunham et al *v.* Downer et al.

a parol agreement between the creditor and principal for an extension of time, nor an actual extension in fulfilment of such an agreement, will have the effect *at law* to discharge the surety; but *aliter* in equity.

In equity, a judgment at law against a principal and surety does not affect the rights of the surety, but they remain the same as before, both as against the principal and the creditor.

In matters where the jurisdiction of the courts of law and equity is entirely concurrent, the adjudication of the former is conclusive upon the latter; and a court of equity will not interfere to relieve a party from such adjudication except on account of new matter discovered subsequent to the trial at law, or of fraud by the opposite party, or of inevitable accident or mistake. But where a party has *equitable* rights not cognizable in a court of law, which would, in a court of equity, prevent such an adjudication as that made by the court at law, a court of equity will grant him relief from such adjudication.

A. and B. signed a note with C., as his sureties, to M. M. recovered judgment against the makers of the note, and assigned the judgment to D., who, knowing that A. and B. were merely sureties for C, made a parol agreement with C. for a good consideration, to extend the time of payment of the judgment, and did extend it accordingly; and afterwards brought a suit against A., B. and C. upon the judgment. A. and B. defended this action upon the ground of the extension of time to the principal, but the court rendered judgment against them on the ground that the facts, above set forth, constituted no defence at law. They then brought a bill in chancery to enjoin further proceedings against them upon the last judgment, and the court held that they were discharged in equity, though not at *law*; and that the adjudication against them in the court of law was not conclusive, and granted a perpetual injunction according to the prayer of their bill.

APPEAL from the decree of the court of chancery. The bill was brought April 4, 1853, and set forth that on the 10th of August, 1844, the orators executed with one Daniel Aikens, and as sureties for him, a joint and several promissory note for five hundred and fifty dollars, payable to John Marshall, or order, in one year from date, with interest annually; that the fact of their being merely sureties upon the note was fully shown to Marshall at the time of its execution; that Marshall commenced a suit against Daniel Aikens and the orators upon this note after its maturity, and recovered judgment against the three at the November Term, 1846, of the Windsor County Court, for six hundred and fifty-two dollars and eleven cents, including costs; that on the 23d of December, 1846, the defendant Downer, at the request

of Daniel Aikens, purchased this judgment from Marshall, and still remains the owner thereof; that Downer, at the time of this purchase, knowing that the orators were merely sureties for Daniel Aikens, made a written agreement with him, that in consideration of such purchase of this judgment, and in part consideration of the purchase of Downer, by Daniel Aikens, of certain personal property at a stipulated price, and the execution and delivery by Aikens to Downer of a note therefor, payable in five years thereafter, with interest annually, and a mortgage of certain real estate to secure the payment thereof, he, the said Downer, would delay the collection of said judgment for three years from that date, if Daniel Aikens should pay the interest thereon yearly during that time; and if the interest was not so paid, Downer should be at liberty to collect the judgment; that Daniel Aikens, in addition to the purchase of such property and the execution and delivery to Downer of the said note and mortgage therefor, paid to Downer the interest on said judgment yearly in advance during the said three years; and that Downer, in accordance with said agreement, delayed the collection of the judgment during that time; that on the 17th of December, 1849, Downer agreed with Daniel Aikens to delay, and did accordingly delay, the collection of the judgment until the 23d of December, 1850, in consideration of the payment to him by Aikens of one year's interest in advance thereon; that from the 23d of December, 1846, till the autumn of 1850, Daniel Aikens was possessed of attachable property amply sufficient to secure the amount due upon the judgment, and that the orators, during all that time verily believed that said judgment was fully paid; that in the year 1850, Daniel Aikens became and still remains insolvent, and that, if the orators should be compelled to pay said judgment they must wholly lose the amount so paid; that on the 28th of December, 1850, Downer commenced a suit in the name of Marshall, upon this judgment, against Daniel Aikens and the orators, returnable to the Windsor County Court, at the May Term, 1851; that such proceedings were had in said suit, that at the March Term, 1853, of the Windsor County Supreme Court, Downer recovered judgment therein, in the name of Marshall, against Daniel Aikens and the orators for eight hundred and twenty dollars and thirty-two cents,

including costs, and had taken out execution thereon and placed it in the hands of an officer for collection; that after the commencement of the suit upon the original judgment, above mentioned, the orators brought their bill in chancery against Solomon Downer and Daniel Aikens, returnable to the May Term, 1851, of the Windsor County Court of chancery, for the purpose of procuring an injunction against all further proceedings at law against the orators upon said judgment, but that the chancellor, after being made acquainted with the facts herein before set forth, decided that the orators had a complete defence at law against said action upon said judgment, and therefore refused to grant an injunction;* that the orators thereupon appeared in court and pleaded to said action the matters in defence substantially as above set forth; and that the supreme court decided in said suit that the orators could have no relief in a court of law, but solely in a court of equity, if anywhere, and that thereupon judgment was rendered by the supreme court against the orators, as above mentioned.†

The bill prayed that Solomon Downer, his attorneys, agents and officers, might be enjoined from proceeding in any manner at law to enforce collection from the orators of the amount due upon the judgment recovered in the supreme court, as aforesaid, and for other relief, etc.

The defendant Downer answered the bill, denying the truth of most of its material statements, and insisting upon the adjudication at law as conclusive, and alleging also a want of equity generally in the bill. The orators filed a general replication, and testimony was taken upon both sides, which it is immaterial to report, as the court in their opinion find the material statements of the bill, above set forth, to be true.

The court of chancery for Windsor County, at the August adjourned term, 1856, UNDERWOOD, chancellor, granted a perpetual injunction in accordance with the prayer of the bill, from which decree the defendants appealed.

---

* NOTE. It appears from the papers in this case, that this decree of the chancellor was not *final*, but merely *interlocutory*, and that the bill was never entered in court. REPORTER.

† See *Marshall* v. *Aiken et al.*, 25 Vt. 328.

*P. T. Washburn*, for the orators.

1. The agreement for the extension of the time of payment of the judgment, was founded upon a good consideration. This is fully decided, virtually between the same parties, in *Marshall v. Aiken et al.*, 25 Vt. 328.

2. The relation of principal and surety was not changed in equity by the judgment; but the giving of the extension dis charged the sureties; *United States* v. *Howell*, 4 Wash. C. C. 620 (2 Am. Lead. Cases 271); *Bulteel* v. *Jarrold*, cited in 7 Eng. Com. Law 63; *Bowmaker* v. *Moore*, 3 Price 214; S. C., 7 Price 223; *King* v. *Baldwin*, 17 Johns. 384; *Dana* v. *Nelson*, 1 Aik. 256; *Bangs* v. *Strong*, 10 Paige 11; S. C. 7 Hill 250 and 4 Comst. 315; *Hubbell* v. *Carpenter*, 5 Barb. 520; *Boughton* v. *Bank of Orleans*, 2 Barb. Ch. 458; *Delapierre* v. *Hitchcock*, 4 Edwards Ch. 321; *Rathbone* v. *Warren*, 10 Johns. 589; *Archer* v. *Douglass*, 5 Denio 513; *Carpenter* v. *Devon*, 6 Ala. 718; *Dixon* v. *Ewings Adm'rs.*, 3 Ohio 280; *Commercial Bank* v. *Western Reserve Bank*, 11 Ohio 444; *Carpenter* v. *King*, 9 Met. 511; *Commonwealth* v. *Miller*, 8 S. & R. 452; 2 Am. Lead. Cases 319, 320; 2 Lead. Cases in Equity, part 2, 369; *Bank of Ireland* v. *Beresford*, 6 Dow 233; *Mayhew* v. *Crickett*, 1 Wils. 418; S. C. 2 Swanst.

3. The very fact that a court of law has refused to give relief to the orators, is a sufficient reason why the court of chancery should entertain the application; *Farquharson* v. *Pitcher*, 2 Russ. 89; *Davey* v. *Pendergrass*, 5 B. & Ald. 187; *Dana* v. *Nelson*, 1 Aik. 256; *King* v. *Baldwin*, 17 Johns. 384; *Bellow* v. *Mahill*, 1 Atk. 126.

The cases, in which a decision at law is conclusive in chancery, are those where, upon the same facts, the same relief is administered in both courts, and do not govern a case like this, where courts of law refuse to grant any relief; BENNETT, J., in *Marshall* v. *Aiken*, 25 Vt. 328; *Rees* v. *Berrington*, 2 Ves. 542; *U. States* v. *Howell*, 4 Wash. C. C. 620.

*Converse & French*, for the defendant Downer.

We insist that the defence, attempted to be made in this case to the enforcement of the judgment against the orators, can not

be made available, even in equity, as against a judgment of a court of record. The original cause of action is merged in the judgment, and the debtors thereby all become principals. This case is analogous to the case where all promise to pay " each as principal," which is held to preclude the sureties from setting up the defence of an extension given to the principal in fact; *Clare-mont Bank* v. *Wood*, 10 Vt. 582; *Spriggs* v. *Bank of Mt. Pleas-ant*, 10 Peters 257; *Ray* v. *Talmadge*, 5 Johns. Chan. 305; *King* v. *Baldwin*, 2 *id.* 554, 557; *Findley's Ex'r.* v. *Bank of U. S.*, 2 McLean 44; *Lafarge* v. *Herter*, 3 Denio 157; *Hubbell* v. *Car-penter*, 2 Barb. 484; *Schroeppel* v. *Shaw*, 3 Comst. 446; *Lenox* v. *Prout*, 3 Wheat. 520; *Bull* v. *Adams*, 19 Conn. 101; *Lock* v. *U. States*, 3 Mason 446; *Tale* v. *Wymond*, 7 Blackford 240; *Stephens* v. *Harvey*, 7 Leigh 541; *U. States* v. *Howell*, 4 Wash. C. C. 620.

2. If this defence is available to the orators in any tribunal, it is so at law. It is well settled that whatever will discharge a surety in equity, is a good defence at law. 2 Lead. Cases in Equity 390, and cases there cited; 2 Am. Lead. Cases 282, 293, 295, and cases there cited; *King* v. *Baldwin*, 2 Johns. Ch. 554; *Miller* v. *McCain*, 7 Paige 451; *Hays* v. *Ward*, 4 Johns. Ch. 123; *Schroeppel* v. *Shaw*, 3 Comst. 446, 452; *Herrick* v. *Bent*, 4 Hill 650; *People* v. *Jansen*, 7 Johns. 322.

3. This question, having been decided between these parties at law, can not again be drawn into controversy, even in equity. It is *res adjudicata*, and conclusive; 2 Story's Eq. sec. 887; *Marine Ins. Co.* v. *Hodgson*, 7 Cranch 332; *Schroeppel* v. *Shaw*, 3 Com-stock 446, 452; *Hall* v. *Dana*, 2 Aik. 381; *Briggs* v. *Shaw*, 15 Vt. 78; *Day* v. *Cummings*, 19 Vt. 496; *Fletcher* v. *Warner*, 18 Vt. 45.

BENNETT, J. This is a case involving principles of very con-siderable practical importance, and we have endeavored to give it a careful consideration.

The case made by the orators in their bill is briefly this. They aver that they executed with, and as sureties for, Daniel Aikens, one of the defendants in this bill, their joint and several promissory note to one John Marshall, he at the time of taking of the note

Dunham et al. *v.* Downer et al.

well knowing that they were but sureties for the said Daniel, and that upon the note becoming due it was prosecuted by Marshall to final judgment, and that Marshall sold and transferred the judgment to Solomon Downer, at the instigation of Daniel Aikens, and that Downer knowing of the relation in which the orators stood upon the note when he purchased the judgment, and without the consent or knowledge of the orators, agreed with Daniel Aikens for a valuable consideration, to extend the time of payment on the judgment, then also well knowing they were but sureties on the note.

The orators then set up in their bill the institution of the suit on the judgment by Downer in the name of Marshall, and against Daniel Aikens, the principal, and themselves, and their attempt to defend the suit at law upon the matter set up in their bill, and that their defence was overruled and judgment rendered against them.

The defendant Downer, in his answer, denies many of the material facts stated in the bill, and insists upon the adjudication at law as being *conclusive,* and a want of equity generally in the bill.   The answer has been traversed, and very considerable testimony taken and filed in the case.   It is hardly expedient in the report of the case that time should be taken up in the discussion of the litigated facts of the case.   It may be sufficient for the court to state, that upon a careful examination of the whole testimony, we think the material facts stated in the bill are established, and we have no doubt the agreement on the part of Downer to extend the time of payment on the judgment, was made upon a sufficient consideration.   In this case, at law, 25 Vt. 332, it was held that payment of interest *in advance,* was a sufficient consideration to support a promise to give time, and we think it is sound law.   See *Austin* v. *Dorwin,* 21 Vt. 44; 5 N. H. 99; 10 N. H. 162; 11 N. H. 335; 2 Metcalf 176.   It is in fact the same principle that applies when part of a debt is paid before it becomes due.   If there is a usage to extend the time of payment for a part of the principal upon the payment of interest on it in advance, as is sometimes the case with banks, this, under certain circumstances, might be evidence of *assent* on the part of the surety to give time.   So the consideration that the principal

debtor would buy of Downer, at his request, certain property at a stipulated price, and secure the payment of the same by his note and mortgage, and had so done, will be a sufficient consideration to make a binding contract. It was so held when this case was before us at law. It may have been that the property was sold at an extravagant price, or it may have been property which one had occasion to sell and the other no occasion to buy. It is claimed in this case on the part of the defence, that the *adjudication* at law is *conclusive*, and their proposition seems to be, that where a *surety* has been sued at law, and makes a defence which has been overruled as insufficient, he can not afterwards on the same state of facts *only*, obtain relief in equity. This position is evidently based upon the doctrine, that the decision of a court of competent authority is binding upon all courts of *concurrent power*, which we admit is a doctrine that does, or should, pervade every well regulated system of jurisprudence, and should be a rule of universal law, having for its foundation the wisest policy, and dictated from the necessity of the case. The interests of suitors, as well as the body politic, imperiously demands that when legal controversies have been once heard and passed upon by a competent tribunal, there should be, an end to litigation.

If we assume that a court of law and a court of equity had clearly concurrent *jurisdictive* power to grant relief to the surety in this case, upon the same state of facts, it would seem to be somewhat difficult, in my mind, to maintain that a court of equity is not bound by the *adjudication at law*. If the matter set up in this bill was *cognizable* at law, and should have availed the surety as a defence in that forum, I should apprehend it could hardly be maintained that the adjudication at law is any *the less conclusive*, even though it should be conceded that that adjudication was unsound. It is often said that a court of chancery can, and will in many cases, relieve against the effects of an adjudication at law, which is no doubt true, but upon well established principles of equity, the relief must however arise from new matter, proved to have been discovered subsequent to the trial at law. If this was not the rule, a door would be open to great vexation, and a cause would never be at rest. Lord REDESDALE well said, that " it was more important that an end should be put to litigation,

than that justice should be done in every case," and in *Bateman* v. *Welloe*, 1 Sch. & Lefroy, 204, he lays the rule down that "it is not sufficient to show that injustice has been done, but it must appear that it has been done under circumstances which authorize the court to interfere, because," he adds, "if a matter has already been investigated in a court of justice according to the common and ordinary rules of investigation, a court of equity can not take upon itself to enter into it again." Lord Chancellor TALBOT says, "the relief must be confined to new matter proved to have been discovered since the trial."

If this was a case where the orators had failed to obtain redress in a suit at law, by the *fraud* of the opposite party, or by *inevitable accident* or *mistake* without any fault on their part, or of their counsel, there might be some reason to hold that the adjudication at law should not be *conclusive*, but no such case is attempted to be made by the bill or the evidence. See *Burton* v. *Wiley*, 26 Vt. 432, and the cases there cited, for the rule as established in our own courts.

In *Pettes et al.* v. *The Bank of Whitehall*, 17 Vt. 435, it was expressly held, that a court of chancery has no power to enjoin a judgment of the supreme court, where the ground of relief set up in the orator's bill was, that the supreme court, *through haste and inadvertance*, rendered an erroneous decision. If this was not so, it would make the court of chancery a court for the correction of the errors of the supreme court, Unless there was some peculiar equity which could not have availed the party at law, the orators must, I apprehend, be concluded by that judgment, and they can not avoid the conclusive effect of it, by maintaining that it was *erroneous*. If the orators have *equitable rights* which were not really *cognizable* in a court of law, the way is open for their relief in chancery, and this is a matter, as has been well said by the defendant's counsel, which lies at the threshold of this controversy.

It is unquestionably true, as a general rule, that a court of law gives the same effect to the extension of time by the creditor to the principal, as would be given in a court of equity, and holds the surety dischared thereby, though this principle was first adopted in a court of equity. Still, the agreement with the principal to extend

the time, must always be ineffectual as a legal discharge in a court of law, whenever it is legally inoperative, whatever the cause may be which interferes with its operation. It is no doubt sound law, that where the principal and surety both enter into a joint, or a joint and several direct undertaking for the payment of a sum of money, "*as principals*," the giving of time to the principal can not avail the surety as a defence at law, whatever the rule may be in equity, and such is the law in this State. See *Sprigg* v. *The Bank of Mt. Pleasant* (10 Peters U. S. 263; *Claremont Bank* v. *Wood*), 10 Vt. 582. In such a case, the doctrine of estoppel operates upon the surety. It has also been maintained, that to enable the surety to be let in to this defence at law, it must appear upon the face of the bond that he is such surety, and such is the opinion of Lord LOUGHBOROUGH, in *Rees* v. *Berrington*, 2 Vesey, Jr. 540, where he maintains that the surety can not aver by pleading that he is bound as a surety, and consequently that it was the form of the security that forced those cases into equity. Lord ABINGER, in *Ashbee* v. *Pidduck*, 1 M. & W. 568, expresses a similar opinion, which is also put forth in other cases; but it strikes me that the weight of authority at the present time is, that though the surety is bound by a direct undertaking under seal, and on the face of the instrument appears as *primarily* liable, but does not *expressly contract as principal*, yet he is not precluded from averring and proving that he was but a surety, but the objection in this case, as it appears to me, rather is, that if averred and proved, the defence would still be inoperative *at law*. Whatever the rule may be in New York and possibly in some of the other States, I apprehend the English common law is, that it is not at law a defence to an action on a bond against a surety, that by a parol *executory* agreement, time has been given to the principal.

The ground assumed is, that the general rule of the common law requires that the obligation, created by an instrument under seal, shall be discharged by force of an instrument of equal validity, and that the rule of law should not be broken down, because there may be cases in which a court of equity should relieve against its operation. The existence of the rule at law is, in effect, recognized in the decisions which have taken place in courts of equity, relieving against this general rule of the com-

mon law, in cases where it was found to operate harshly. The cases must have proceeded upon the ground that, at law, the things prayed for could not be done. See *Davy* v. *Prendergrass*, 5 Barn. & Alderson 187 ; *Rees* v. *Berrington*, 2 Vesey, Jr. 540.

It is said by RUFFIN, Ch. J., in *Shaw* v. *McFarlune*, 1 Iredell 216, "that an agreement for indulgence to the principal does not amount to satisfaction, and nothing, *in pais*, can discharge an obligation or a judgment, but *performance or satisfaction*." The same principle will apply to a debt of record. This was fully settled in England, in the case of *Bulteel* v. *Jarrold*, 8 Price 467, where it was held in an action of debt on a recognizance for bail, that a plea, that time had been given to the principal, was no defence for the surety *at law*. This was so held in the court of Exchequer, in the court of Exchequer Chamber, and also upon a writ of error in the House of Lords. The case of *Clark* v. *Niblo*, 6 Wend. 236, has not escaped my notice, in which it was held in an action of debt on a recognizance of bail, that a plea setting up an agreement made by the plaintiff *before a breach of the condition*, that the defendant in the original action might depart the State, and that no proceedings should be had in such action until his return, was a good bar.

Chancellor WALWORTH, who gives the opinion of the majority of the court sustaining the plea, admits that the plea can not be sustained as the law is settled in England, and concedes the rule there to be as laid down in *Davey* v. *Prendergrass*, and in *Bulteel* v. *Jarrold* ; and grounds himself upon three American decisions, *United States* v. *Howell*, 4 Wash. C. C. ; *The People* v. *Jansen*, 7 John. ; and *Miller* v. *Stewart*, 4 Wash. C. C., and same case reported in 9 Wheaton.

I apprehend the learned chancellor mistook the force of these decisions as being opposed to the rule of the English common law. In the case of *The United States* v. *Howell*, the undertaking of the surety was not direct *for himself*, but it was what is sometimes called *collateral*, that is, it was an undertaking for the performance of certain acts by the principal. In such a case, the law is clear that a *parol dispensation* of the performance of a bond by the principal, before breach, will discharge a surety, and the court put that case upon the ground that the surety stood in the

Dunham et al. *v.* Downer et al.

light simply of a guarantor, and as not in any way disturbing the case of *Davey* v. *Prendergrass*, or *Bulteel* v. *Jarrold*. In the other two cases the bonds were given to secure the performance of certain official duties by the principals.

It appeared in those cases upon the face of the bonds, that the defendants were but sureties, and their undertaking but *collateral*, and a *parol dispensation of the performance of the conditions* of the bonds before breach, in all such cases, is a good plea for the surety.

The case in the 7 Johnson is put upon the ground of the *laches* of the supervisors in not calling the *loan officer* more seasonably to an account for his defaults, and though this ground has repeatedly been held unsound in subsequent adjudications, yet if the evidence in that case had been held sufficient to establish a *parol evidence* of performance by the principal before breach of the bond, the defence of the surety would have been ample at law, and would have stood on unquestioned ground.

In the case of *Miller* v. *Stewart*, the *territory* of the deputy collector was extended after the giving of the bond, without the consent or knowledge of the surety, and the case is put on the ground that there was *a legal change in the appointment of the deputy collector*. This of course, as matter of law, would supersede the performance of any further duties under the original appointment, to secure which the bond was taken, and would to every intent and purpose, so far as the surety was concerned, be a waiver of the conditions of the bond.

In *Rathbone* v. *Warren*, 10 John. 587, the relief was applied for and granted in chancery. It must have been considered that there was no remedy at law, or at best that it was doubtful. It is a principle of the common law that a duty arising by record must be discharged by matter of as high a nature. So of a bond or other deed. See 5 Bacon's Ab., Title Release, p. 682, and authorities there cited.

This principle does not imply that a duty arising by record or bond may not be discharged by a parol *executed* contract which operates as a satisfaction.

It is well settled that matters which are a defence in equity can not be pleaded at law. 1 Saunders' Plead. and Evi. 191, and

cases there cited. In *Beddome* v. *Holbrook*, 1 B. & P. 454, BUL-LER, J., expressed an opinion that the bankruptcy of the principal can not be pleaded by the bail as a defence at law, but might be the ground for a motion on the equity side of the court; and in *Donnally* v. *Dunn*, 2 B. & P. 45, the point was decided, and BULLER, J., uses this decisive language: "it is of importance to the public and the profession, to put an end to attempts to introduce upon the record questions of practice which can not be considered as legal defences, but which belong to what may be considered. the equity side of the court;" and he added, "the defendant is called upon to state a legal defence on record, and not merely to say he has equity in his favor." I am of the opinion that the case of *Clark* v. *Niblo* is not in accordance with the common law principles, and that the better opinion is with the minority in the court of errors, it having been decided by a vote of eleven to eight.

If the obligee of a bond accepts of the performance of another thing from what was stipulated for, or of a performance at a different time in lieu of what was stipulated for, it would be a good defence to an action on the bond, but no executory parol agreement, I apprehend, can on principle be plead in bar to such action, or to debt on judgment, and if a parol agreement to give time, supposing it not to be the case of a surety, but a common bond for the payment of money at a given day, is no bar to the bringing an action immediately at law, though there be a good consideration for the agreement, I can not see how the giving of time to the principal upon a bond, can be used at law by the surety as a defence. If a declaration on the original contract would be good against the principal, and could not be defeated by the evidence offered to show an alteration in the contract by the parties, the result at law, it would seem, must be the same, where the proceedings were against the surety, and in either case, such a defence at law would be a nullity. It can hardly be claimed, I think, if the suit on the judgment had been against the principal alone, he could have set up the parol extension of time for payment, as a temporary bar to the action at law.

It has sometimes been held in courts of equity, that a judgment against the principal and surety, so terminated the *equites* of the

surety in regard to the creditor, by means of the prior contract being *merged* in the new obligation created by law, so as to have led to a refusal in courts of equity, to give effect to the relations of principal and surety, as they existed on the original contract. But I apprehend the *equities* of the surety should not be effected by the *meger*. A merger is not favored in equity, and will never be allowed to take place, unless there be special reasons why it should, and it be necessary to carry out the intention of the party, while at law the intention of the party is not made the governing principle, though it is usually considered in questions of *merger*.

In other cases it has been held, that in courts of law the equities of the surety were cut off by the *merger*, so as to disenable courts of law to grant relief to the surety growing out of the relation of principal and surety on the original contract, and such are the cases of *Pole* v. *Ford*, 2 Chitty 125 ; *Lafarge* v. *Herton*, 3 Denio, 157, and others which might be referred to.

This court held in *Marshall* v. *Aiken et al.* 25 Vt. 328, that in a joint action of debt against the principal and sureties on the judgment, the matter set up in this bill could not be set up by the sureties as a valid bar to the action in a court of law, and this it appears to me is directly in accordance with the case of *Bulteel* v. *Jerrold*, 8 Price 467, and with the principles of the case of *Davey et al.* v. *Prendergrass*, 5 Barn. & Ald. 187, and other like cases. The effect of the *merger* is to make the creditor's debt a debt of record, and subject it to the operation of laws applicable to the discharge of debts of that description, as in *Bulteel* v. *Jerrold*. The judgment in one State is even a *conclusive merger* in another State, and extinguishes the original ground of action, as was held in *Green* v. *Sarmiento*, Peters C. C. 74, and in the case of *McGilvray & Co.* v. *Avery*, 30 Vt. 538. The agreement to give time does not profess to act, and could not act upon the original cause of action. The discharge of the surety is now put as it was in the case at law, upon the sole ground of the extension of time of payment, and if it is operative *at law*, it must be upon the ground that a new contract has been made with the creditor, *varying* the judgment contract, and that involves the question whether a debt of record can be controlled or varied at law by an *executory parol contract.* The relation of the principal and surety, as between

themselves, creates a contract *collateral* to the one with the cred-
itor, and hence that relation may be shown by parol as between
themselves, although they contract expressly as principals, by the
instrument itself. Though the original cause of action was *merged*
in the judgment as between the parties, yet it has no effect upon
the *collateral* relation of principal and surety, and if a surety
pays a judgment, he may, at law, show he was but surety on the
demand upon which the judgment was predicated, and recover
at law ; but does it follow from this, that the surety can set up as a
defence at law, the fact that time has been given the principal,
when sued by the creditor on the judgment?

It is true the contract with the creditor is made as *with princi-
pals,* and the creditor's duty to respect the rights of the surety
arises out of the relation of principal and surety known to the
creditor to exist between the co-obligors or promissors, yet it by
no means follows that the obligation or duty of the creditor to
respect the rights of a surety upon a simple contract, can be
enforced at law when turned into a debt of record, upon the same
state of evidence as might be operative, so long as it remained
in simple contract. Courts of law, it was well said by Ch. J.
RUFFIN, in *Shaw* v. *McFarlane*, 1 Ire. 216, " *deal only with legal
liabilities and legal discharges.*" It was said by Justice MCLEAN,
in 1839, in the case of *Findley's Executors* v. *Bank of United
States et al.* 2 McLean 54, which was in chancery, that his
researches had not enabled him to find a single case where relief
had been given on the ground that the relation of surety subsists
after judgment, with the exception of the one cited from the Ohio
reports (referring to the case of *Dixon & Hawke* v. *Admr's. of
Ewing*, 3 Ham. 280). The cases of *Lenox* v. *Prout*, 3 Wheat. 520;
*Bay* v. *Talmadge*, 5 John Ch. 305 ; *Hubbell* v. *Carpenter*, 2 Barb
S. C. 484, and others to the same effect, are all cases in chancery,
where relief was denied the surety after the demand had passed
into judgment, and it is quite apparent in those cases, that no well
founded distinction was supposed to exist at law and in equity.

But I apprehend that there is good ground for a distinction,
and that a court of equity should and will keep the original
relation of surety on foot, for the purpose of giving relief
to the surety. In the case of *Bulteel* v. *Jarrold*, 8 Price, no

question was made but what the surety was entitled to *equitable relief*. So in *Davey* v. *Prendergrass*, 5 Barn. & Ald., ABBOTT, Ch. J., says, "there may indeed be such a consideration for the agreement, as may induce a court of equity to direct that the party shall not proceed to enforce his remedy at law, though the agreement to give time would not control the obligee of the bond in a court of law. So TINDALL, Ch. J., in *Combe* v. *Woolf*, 8 Bingham 156, says the relief in such a case must be had in equity. See also *Bray* v. *Manson*, 8 Mees. & Wels. 668. The same reasons which induce a court of equity to grant relief to sureties who are bound by a specialty, and in actions of debt upon recognizances of bail, upon the ground of a parol agreement to give time, should induce equity to give relief for a similar cause, where there has been a judgment against the principal and surety. In both cases, the relief to the surety is based upon rights which are acknowledged and protected in courts of equity, and which are not recognized, and can not be protected by the rules of the common law. In *Bangs* v. *Story*, 10 Paige 11, it was held by the chancellor that a surety was discharged in equity by dealings with the principal after judgment against the principal and surety, in derogation of the rights of the surety and without his consent. This was a case where time had been given the principal. This case was affirmed in the court of errors, 7 Hill 250. A court of equity will not regard the *merger*, but will go behind the judgment to protect the rights of the surety.    See *Strones* v. *Thorn*, 3 Barbour S. C. 314; *Hubbell* v. *Carpenter*, 5 Barbour S. C. 520 ; *Bangs* v. *Strong*, 4 Comstock 315.

. In the case in the 5 Barbour, Judge HARRIS fully admits that relief could not be had for the surety at law, though the soundness of the position is somewhat questioned by ALLEN, J., in the case in 3 Barbour  In the case of *McHaney* v. *Crabtree*, 6 Monroe 104, it was held that the defence of a surety on account of the giving of time to the principal was exclusively within the cognizance of a court of equity, and could not be set up as a bar to an action at law.    It is undoubtedly true that the courts of Ohio hold that the surety can claim his privileges, after judgment, in chancery, and the case of the *Bank of Steubenville* v. *The Administrators of Robert Carrol*, 5 Hammond 207, holds, that in that case he

could have relief at law as well as in chancery. The suit there was against the representatives of the surety on his bond, and the defence set up was a confession of judgment by the principal and a stay of execution against him *entered of record.* ⎝ Here was something more than a *parol executory agreement.* The hands of the creditor were tied up *by matter of record.* ⎠

In *The United States* v. *Howell,* 4 Wash. C. C. 420, Judge WASHINGTON fully accords with the case of *Davey* v. *Prendergrass,* and in the application of the principles stated to the case itself, and it should be remarked that that was a case where the undertaking of the surety was *direct,* that *he himself* would pay, etc., while in the case in 4 Washington the undertaking of the surety was *collateral,* that is, that the *principals* should pay, etc., and the distinction is an important one, and in that case Judge WASHINGTON well held, that the giving of time by the United States to the principals, without the consent of the surety, before there had been a breach of the principal's obligation, was a discharge of the surety, and that he might set up the defence at law. That case goes on the ground, as has already been said, that the undertaking of the surety was in the nature of a *technical guaranty,* and that a *parol dispensation* with the terms of the contract as to the principal, would discharged the surety, and to this effect the decisions are numerous. In such a case, a consideration is of no importance, a mere license would be operative. But it was held by Judge WASHINGTON, that as there had been a breach of the principal's bond before time was given, there could be no ground to claim that the contract of the surety had been varied by the subsequent agreement giving time, and that in such a case the surety could only find relief in equity. In the case of *Carpenter.* v *King,* 9 Metcalf, 511, the relief was given to the surety in a court of law after judgment, and the question as to the effect of the judgment upon the rights of the surety somewhat discussed. But it may be remarked that that case in no way raises the question as to what should be the effect of a *parol executory agreement* with the principal, giving time for payment of the judgment. The injury complained of by the surety, was a false though mistaken representation to him by the creditor, that the debt was paid in full by the principal, when such was not the fact, and by

means of which the surety was induced to give up to the principal security which he held.   The principal had subsequently died insolvent.

So in *Harris* v. *Brooks*, 21 Pick. 195, the represetation by the creditor to the surety was, that he would look to the principal for payment, by reason of which the surety omitted to obtain security of the principal.   In this latter case, however, the suit was on the note.   In each of these cases the surety was held discharged, not upon the ground of any new contract with the principal varying the original agreement, for no valid contract of any kind had been made by the creditors, but the sureties having been induced to act upon the representations, to their injury, they amounted to a moral estoppel on the part of the creditor, and to hold otherwise would be to enable the party to commit a fraud, and I do not think it strange that the court gave effect to this estoppel in a court of law to relieve the surety after judgment, especially as they had at that time no court of general equity jurisdiction. The courts of Pennsylvania held, that separate judgments against a principal and a surety do not extinguish the relation between them, and in an opinion of Judge GIBSON, in the case of the *Manufacturers' and Mechanics' Bank* v. *The Bank of Pennsylvania*, 7 Watts & Sergeant, 339, 343, in which the question received a somewhat full consideration, he remarks, that it is to be regretted that the opinion of Chancellor KENT, in *Bay* v. *Talmadge*, should have given currency to the doctrine establishing it as a rule of general equity, that a judgment against principal and surety extinguishes the relation between them as to every one but themselves, and that such a rule has no place in the jurisprudence of Pennsylvania.

Judge GIBSON, in the course of his opinion, p. 342, remarks, " a judgment may perhaps fix an indorser (a surety) at law, as a court of equity is a surety's peculiar forum, though that does not seem," he says, " to have been the ground of the decision in *Pole* v. *Ford*."   It is quite evident that courts of equity have many times held, that a judgment extinguished the relation of principal and surety, without having their attention called to a distinction between the rules of *law* and *equity*.   So courts of law have not unfrequently held that the relation was extinguished,

without considering whether the rule should be different in equity. In *Sprigg* v. *The Bank of Mount Pleasant*, 14 Peters U. S. 201, relief in equity was denied to the surety, on the ground that all the obligors in the bond were bound, " as principals," and that though it should be admitted that in a court of equity no technical estoppels are allowed to operate as in courts of law, and though the court in the 10 Peters, when that case was before them at law, put it on the ground that the sureties were estopped from setting up their defence, yet they held that the effect of the parol evidence was to vary the operation of the bond, and that this could no more be done in chancery than at law, and denied the relief on that ground. For the purposes of this controversy, the decision in the 25 Vt. must at all events be taken to be the law of the case.

On the whole, then, we think that the defendant Downer can not claim to succeed in his defence, upon the ground that the adjudication at law is a bar to the orator's bill, and we think that, upon reason and upon the weight of authority, he is entitled to the relief prayed for in a court of equity.

The decree of the chancellor, allowing a perpetual injunction, is affirmed, with costs.

Poland, J., concurred, as follows:

I concur in the result arrived at by the court in this case. I am unwilling, however, to have it understood that in my opinion, the grounds, upon which relief is granted to the orators in equity, are not equally valid and available as a defence to an action at law against them, upon the judgment which they undertook to defend.

But inasmuch as the court held that their defence was not a matter of proper legal cognizance, and therefore disallowed it, I consider that the recovery against them at law, should not prevent their availing themselves of it in equity, and that therefore, the judgment at law is no bar.

If it were true that a judgment at law, upon a note signed by sureties, merges the debt in the judgment, so that the relation of principal and surety no longer exists, as was said by the court in the suit at law, then of course it would equally preclude them

---

---

from any remedy in equity, because they are allowed relief in equity wholly upon the ground that the relation of surety still subsists.

But I consider the assumption without any just foundation in either court, and think that the courts of law should, equally with courts of equity, take cognizance of such defences.

I am aware that there is some conflict of authority on this subject, but I think the great balance of American authority sustains my view.

I am authorized to say that at least one other member of the court who has heard this argument, concurs with me in this view.