EZEKIEL CLIFTON, plaintiff in error, vs. JOHN LIVOR, et al., defendants in error.

[1.] If a party is prevented by sickness from appearing at the proper Court, at the proper time, to make his defence at law, he is entitled to relief in a Court of Equity.

[2.] No appeal lies from a rule absolute awarded by *the Court*, for the foreclosure of a mortgage.

[3.[ Where a defence is purely equitable, a party is not foreclosed from asserting his right, by suffering judgment *at law* to go againt him.

In Equity, from Emmanuel Superior Court. Decision by Judge HOLT, at chambers, October 2, 1857.

This was a bill for injunction and relief, filed by Ezekiel Clifton, against John Livor.

The bill alleges that Livor, of the State of New York, applied to complainant, and represented to him, that he could, by a *new process*, teach him, in the space of 60 days, a thorough knowledge of surveying, etymology, syntax, single and double rule of three, analysis, interest, discount, loss and gain, equation, partnerships, square-root, book-keeping, and simple equations of algebra. That complainant, an uneducated man, and relying upon the representations and promises of said Livor, entered into an agreement with him, to teach complainant the said branches of an education, and in consideration thereof, executed and delivered to him twenty (20) promissory notes, each for thirty dollars, amounting in the whole to the sum of $600; and for the security of the payment thereof, executed to Livor a mortgage on two tracts of land, containing about 780 acres, situated in the county of Emmanuel.

That Livor, on his part, executed and delivered to complainant, the following instrument of writing, viz:

GEORGIA, EMMANUEL COUNTY.

I, John Livor, do agree to teach, from the 20th January, 1851, for the term of 3 months, considering twenty days as

Clifton vs, Livor et al.

one month, to Ezekiel Clifton, for the purpose of imparting the following branches: The art commonly used for surveying, etymology and syntax of E. grammar, C. arithmetic, consisting of the single and double rule of three by analysis, interest, discount, loss and gain, equation of time, partnerships and square-root, also the art of book-keeping, and the simple equations of algebra.

Furthermore, the said Ezekiel Clifton is empowered to follow me up, for the purpose of being taught and improved in the above branches, after the expiration of time above mentioned, free of charges. I also agree that all notes I hold against Ezekiel Clifton, shall be null and void, if I do not comply with the terms above mentioned.

The school is to begin on the above date.

JOHN LIVOR.

The bill further states, that Livor, after teaching only twenty days, left for parts unknown, and wholly failed to teach complainant the branches enumerated in said agreement, and took with him the notes and mortgage, obtained upon representations which turned out to be false and fraudulent.

That afterwards, said Livor, by his attorney, A. H. H. Dawson, at the October Term, 1855, of Emmanuel Superior Court, procured a *rule nisi*, returnable to April Term, 1856, to foreclose said mortgage. That for providential causes said April Term was not held, and complainant, therefore, had no opportunity to make his defence. At the September Term, 1856, complainant was too sick to attend Court, until the evening of the second day of the Term, and before his arrival said *rule* had been made absolute, although his counsel had moved the Court to allow complainant until the last day of the Term to file his defence, and which was refused.

That upon said judgment of foreclosure a *fi. fa.* issued, and was levied upon the mortgaged premises, which were sold on the first Tuesday in March, 1857, by the Sheriff of Emmanuel county, who, by the direction of A. H. H. Daw-

Clifton vs. Livor et al.

son, attorney for Livor, bid off said land for Dawson, at and for the sum of nine hundred dollars; said Dawson not being present himself, or by any agent save the Sheriff. That no money has been paid by Dawson upon his said purchase, and no titles made to him by said Sheriff, and complainant is still in possession of the premises, but Dawson is threatening to turn him out.

The prayer of the bill is, that Livor and his attorney, Dawson, be decreed to surrender said notes and mortgages, and that that they be declared null and void and cancelled; that the judgment of foreclosure and *fi. fa.* thereon, be annulled and set aside. That said sale be declared a nullity, and said defendants be perpetually restrained and enjoined from further proceedings under said judgment and *fi. fa.*, and under said illegal sale of said premises.

Upon hearing the bill, the Chancellor made the following order, to-wit:

Read, considered and sanctioned, as far only as relates to the sale under the mortgage *fi. fa.* complained of. Let subpœnas be issued as prayed for, and an injunction to restrain all further proceedings under said sale. The injunction to continue until the further order of the Court.

*(Signed,)*     WM. W. HOLT,

*Judge S. C., M. Dist.*

To which order, counsel for complainant excepts, because the same is only a partial one, and extends only to the sale made by the Sheriff and the proceedings thereon, whereas, the prayer of the bill is to enjoin and restrain defendants from any proceedings in the premises.

W. B. GAULDEN, for plaintiff in error.

A. H. H. DAWSON, for defendants in error.

*By the Court.*—LUMPKIN, J. delivering the opinion

This was an application by bill for relief and injunction.

It charges, that on the 20th day of January, 1851, one John Livor, of the State of New York, applied to the complainant, and represented to him that he could, by a *new process*, teach complainant in the space ef sixty days, a thorough knowledge of surveying, etymology, syntax of English grammar, single and double rule of three, analysis, interest, discount, loss and gain, equation of time, partnerships and square-root; also the art of book-keeping, and the simple equations of algebra!!! Furthermore, the complainant is " empowered to follow" the said Livor " up," for the purpose of being improved in the above branches, after the expiration of the time mentioned in the contract, free of charge. The said Livor also agreed that all notes held by him against complainant, should be null and void, if he did not perform his part of the undertaking.

The bill charges, that Livor taught twenty days only, or one-third of the stipulated term, and left the country for parts unknown; and that he wholly failed to teach complainant the branches enumerated in his written articles. There is an acknowledgment upon the agreement, of the payment of twenty days, viz: one month's tuition, commencing from the 20th January, 1851.

The bill further charges, that the complainant being an uneducated man, and relying upon the promises of Livor, made and delivered to him twenty promissory notes, each for thirty dollars, amounting in the whole to the sum of $600 ; and for securing the payment thereof, the complainant executed to Livor, a mortgage on two tracts of land, containing about 680 acres, lying in Emmanuel county.

The bill also states, that at the October Term, 1855, of the Superior Court of said county, Livor, by his attorney, A. H. H. Dawson, Esquire, obtained a *rule nisi* to foreclose the

mortgage charged to have been falsely and fraudulently procured by Livor from the complainant, which *rule nisi* was returnable to the next April Term, 1856. That owing to providential causes that Term of the Court failed, and that at the September Term, thereafter, complainant was too sick to attend Court until late in the evening of the second day of the Term; and that when complainant arrived, the *rule* had been made absolute, although complainant alleges, that he was informed by his counsel that he, in his behalf, had urged upon the Court to allow complainant until the last day of the Term, to file his affidavit in terms of the law, which the Court refused.

The bill further states, that but for the sickness of the complainant, which prevented him from attending Court, he could have made it appear that the mortgage so foreclosed, was not only fraudulently procured, but that Livor, the mortgagee, utterly failed to comply with his part of the agreement, and with the conditions upon which he obtained said mortgage.

It further appears from the bill, that upon the *rule* absolute, a *fi fa.* was issued and levied on the mortgaged premises, which were sold and bought in by one John Overstreet, the then Sheriff of Emmanuel county, Mr. Dawson, the attorney of Livor, not being present bidding by himself or any agent; neither did he pay any money for the land. That no title has been conveyed by Overstreet; that Clifton, the complainant, is still in possession, but that he is threatened with eviction by Mr. Dawson, the attorney for Livor.

Upon these allegations in the bill, the Court granted the injunction, so far only as relates to the sale already made by the Sheriff. And the only question now is, whether, according to the case made, the complainant is not entitled to further relief? In other words, is he not entitled to be let in to the defence of the contract itself; and to avoid it if he can, for fraud, failure of consideration, or any other cause?

We need not characterize this contract; it characterizes

itself. It is stamped upon its face with the grossest imposition on the one part, and the blindest credulity on the other. It proves, to be sure, that the "schoolmaster is abroad," but such a schoolmaster! It shows another fact, that the people of Georgia are longing to eat of the fruit of the Tree of Knowledge. The State owes it to herself to supply them with competent teachers.

We need not remark, that no appeal could have been entered from the rule absolute awarded by *the Court*, in this case It has been gravely doubted whether the mortgagor, upon a rule to foreclose, is entitled to make any other defence than that specified in the statute, and that is, that he is entitled to payments which have not been credited upon the mortgage, or to set-off, which in equity ought to be allowed. True, this Court has put a more liberal construction upon the judiciary Act of 1799, prescribing the mode of forclosing mortgages on real estate. Still, it makes no express provision for forming an issue to be tried by a jury. In short, it does not directly provide a common law remedy. We are inclined to think. therefore, that the mortgagor is entitled to go into equity, to make his defence available, especially if, as in this case, he is entitled to special relief, namely, to have his notes and mortgage delivered up to be cancelled, that they may no more encumber his property. If this be so, the complainant cannot be said to have had his day in Court. And he has lost nothing by suffering judgment *at law* to go against him.

[1.] But waiving all these views, we meet the question broadly and inquire, does not the complainant render a sufficient excuse for failing to file his defence *at law* ? He is not responsible for the miscarriage of the Court at the Spring Term, 1856; and he was prevented by sickness from arriving in time at the Fall Term thereafter, to make his defence; a stubborn sworn *fact*, whether brought to the knowledge of the Court at the time of the foreclosure or not. He was not bound to make it before. And even if he were, it was his privilege, under the Act of 1853, to amend his defence, at the

September Term, 1856, or at any other stage of the cause. And it is against just such accidents that a Court of Chancery will grant relief. More especially will it interpose to give to the deluded victim of this transparent imposture an opportunity to defeat a demand which, if one statement only in the bill be true, is absolutely null and void. For Livor, by going off and failing to teach the stipulated term, forfeited his contract. He has already been paid for the month he taught, and this, under the agreement, is that much more than he was entitled to receive.

In every view of the case, therefore, we hold that the Judge erred in not granting a *general* instead of a *partial* injunction.

Judgment reversed.