## JOHN S. KERSEY,

### *vs.*

## MOSES RASH,

*Kent, March T. 1869.*

The Court of Chancery in relieving against judgment, at law upon grounds impeaching their justice, should act carefully and hold itself within just limits, since the jurisdiction, though unquestioned, is one which, from the pressure of hardship, always an element in these cases, is liable to abuse; and the abuse of it is extremely mischievous, tending, as it does, to a conflict between different jurisdictions and to the promotion of needless litigation.

To warrant the interference of a court of equity, with the operation of a judgment at law, upon grounds of defense or evidence, which were cognizable at law, but not used at the trial, it must appear that the defendant at law was prevented from availing himself of such grounds of defense or evidence, either by fraud or surprise, or by what is termed, in the sense of courts of equity, accident, and without any neglect or default on the part of himself or his agents.

If a party has an equitable defense, one not cognizable at law, of which, there-fore, he could not avail himself at law, and consequently has suffered judg-

41

ment, equity will always relieve against the judgment, not, however, by compelling a new trial at law, but by dealing with the subject as one of its own original jurisdiction.

An injunction to restrain proceedings under a judgment was refused for want of equity in the bill, upon allegations that the claim for which the judgment had been recovered had been paid, and that the complainant held a receipt for the whole amount; that he was prevented by sickness from attending the trial, but wrote seasonably to his attorney, enclosing a physician's certificate, but whether this was received or not, he did not know; that the attorney wrote to him for the receipt, "in ample time," but the letter did not reach him until after the trial; that the damages originally laid in the narr at $1,500, had been increased at the trial term to $3,000, upon the discovery by the plaintiff at law, that certain unscrupulous persons, utterly unworthy of belief, and whose testimony could have been wholly discredited, but for the sickness and consequent absence of the defendant from the trial, would swear that a much larger amount was owing than was then claimed, and that testimony had been discovered, too late for application for a new trial, of admissions by the other party inconsistent with the claim sued for, the judgment having been recovered but two years after suit brought.

The loss of a case at law, through a party's own *laches*, will defeat his whole title to relief, as well as that founded upon after-discovered testimony, as to that which rests upon a failure to avail himself, properly, of that which he had under his control.

To lay a ground for relief in equity against perjury and surprise in obtaining a judgment at law, the bill should name the witnesses who swore falsely, and set forth facts tending to show that their testimony was false. There must be an averment of facts—not of suspicions only.

If upon the hearing of a motion to dissolve an injunction, it appears that such dissolution might work irreparable mischief to the complainant, the injunction should be continued to the hearing ; such a course being within the now settled discretion of the Court, in the matter of dissolving or continuing preliminary injunctions.

It is inconvenient and undesirable to try motions to dissolve preliminary injunctions upon affidavits, or depositions taken under Rule 23. In a case proper for affidavits under the English practice, it is preferable to let the injunction stand until the hearing, except in cases where either to dissolve or to continue the injunction would work irreparable injury, and therefore a prompt decision becomes essential.

BILL IN EQUITY TO RESTRAIN PROCEEDINGS AT LAW.—The defendant at the November Term, 1867, of the

Superior Court of New Castle county, recovered a judgment against the complainant for $3,359.68. The action was brought at the November Term, 1865, and continued from term to term. On the recovery of the judgment a *remittitur* was entered for the excess above $3000, which was the amount of damages laid in the *narr.* .A *fi. fa.* was issued to the May Term, 1868. April 13th, 1868, upon Kersey's petition, an injunction was ordered. September Term, 1868, the bill was filed, and at the March Term, 1868, the answer was filed.

The bill alleges that the claim for which the judgment was recovered had been paid, and that Kersey held receipts for the whole amount; that he was prevented by sickness from attending the trial, but wrote seasonably to his attorney, enclosing a physician's certificate; but whether this was received by the attorney he does not know. That the attorney wrote to him for the receipts "in ample time," but the latter did not reach him until after the trial. The bill further alleges that the damages, originally laid on the claim, were $1500; that at the trial term by leave of the Court, the sum was increased to $3000; that this was done upon the discovery, by Rash, "that certain unscrupulous persons, utterly "unworthy of belief, and whose testimony your orator "could have wholly discredited, had he not been disabled by "sickness, would swear that a much larger amount was "owing than was then claimed." The bill further alleges, as a ground of belief, certain after–discovered evidence, being the testimony of six persons, to the effect that Rash had, on several occasions, said that Kersey did not owe him; that such a person, naming different ones at different times, had his money; that he had sued Kersey in order to find out who had his money. That this testimony was discovered too late for application to the Superior Court. The suit at law arose out of an adventure entered into by these parties and several others associated with

them, to put in substitutes for persons drafted into the military service of the United States. Kersey was treasurer. The suit was for money alleged by Rash to have been advanced for the business, and also for his share of the profits. The persons alleged, in the after-discovered testimony, to have been named by Rash as having his money, were other members of this association. These are the material allegations.

The answer is, in effect, a denial of the facts alleged in the bill as the grounds of equity. But as the decision does not turn upon the answer, or its effect, it is unnecessary to set forth its allegations in detail.

The bill was filed at the September Term, 1868, and at the March Term, 1869, the defendant filed his answer and made a motion to dissolve the injunction, pending which the comglaiuant moved for leave to take depositions in support of the bill.

*Hillyard*, for the complainant, in support of the motion.

There is a distinction between common and special injunctions, with respect to reading affidavits against the answer; they are allowed in the latter case. *Drewry on Inj.*, 277-8; 3 *Dan., Ch. Pr.*, 1810; 3 *Snmn.*, 73-4. There is another distinction between a motion after answer for injunction, no preliminary injunction having been obtained, and a motion to dissolve. 3 *Dan., Ch. Pr.*, 1884; *Drewry on Inj.*, 278-9; *Smythe vs. Smythe*, 1 *Swanst.*, 252. In the latter case the refusal of the application was put upon this ground. In *Morphett vs. Jones*, 19 *Ves.*, 349; Lord Eldon was more liberal than in *Clapham vs. White*, 8 *Ves.*, 35, as to the admission of affidavits.

Originally, this liberty was confined to cases of waste, but it has been expanded so as to include all cases of

irreparable damage. *Peacock vs. Peacock*, 16 *Ves.*, 49 ; *Gibbs vs. Cole*, 3 *P. Wms.*, 255 ; *Beatty vs. Beatty*, 2 *Molloy*, 541 ; *Potter vs. Chapman, Ambler*, 98 ; *Isaac vs. Humpage*, 1 *Ves., Jr.*, 427 ; *Poor vs. Carleton*, 3 *Sumn.*, 73 ; *Clum vs. Brewer*, 2 *Curt., C. C.* 506 ; *Benton vs. Gibson*, 3 *Heyw., N. C.* 136.

We do not question that the general rule is, as contended on the other side, that an answer denying the equity of the bill, dissolves the injunction, but claim this case to be within the exception founded upon irreparable mischief.

That this is a case of irreparable damage, if the injunction be dissolved, needs no argument.

*Smithers*, for the defendant.

After answer, on motion to dissolve, the complainant can not, by testimony, support his bill, on which he originally relied without affidavits, not supplementing affidavits taken; but taking them *de novo*. Injunctions to stay proceedings at law, are expressly distinguished from cases of irreparable mischief. *Capehart vs. Mhoon, Busbee's Eq.*, (*N. C.*) 31 ; *Lloyd vs. Heath, Ib.* 39 ; *McDaniel vs. Stoker*, 5 *Ired. Eq.*, 274 ; *Eastburn vs. Kirk.* 1 *Johns. Ch.* 444 ; *Hoffman vs. Livingston*, 1 *Johns. Ch.*, 211 ; *Gariss vs. Gariss*, 2 *Beasley*, 321 ; *Clapham vs. White*, 8 *Ves.*, 34 ; *Berkeley vs. Brymer*, 9 *Ves.*, 354.

The case of *Isaac vs. Humphrey*, has been overruled and is so stated in the note. The case of *Poor vs. Carleton*, admits the general rule, claiming only such exceptions as rest upon the ground of irreparable mischief, as cases of waste, partnership, patents, and copyrights. It was decided as a case of that class ; besides, the denial in that case was held not entitled to the usual credit, being, as to facts, not of defendant's personal knowledge. Certain affidavits were held admissible, because they went to

collateral matters not touched by the answer. There were also affidavits originally filed with the bill.

THE CHANCELLOR :—

Under the English practice, it is the general rule to dissolve the injunction, upon answer fully denying the equity of the bill ; and on the motion to dissolve, generally, affidavits cannot be read in support of the bill. There are exceptions to the rule proceeding upon the ground that the dissolution of the injunction, before the hearing, may work irreparable damage to the complainant, on which account the English Courts, in these exceptional cases, admit affidavits on the motion to dissolve. These are cases of waste, infringement of patents, partnership, &c. The defendant's counsel insists that the exceptions are strictly confined to injunctions restraining acts in the nature of torts, and are never extended to injunctions staying proceedings at law. This has been the point of argument. Now, without deciding this question, I refuse the application to support this bill by affidavits, and will proceed to hear the motion upon the bill and answer only, and this upon the ground, that, in no event will affidavits be necessary. For if, upon the argument of the motion, this should appear to be a case in which the dissolution of the injunction might work irreparable mischief to the complainant, I shall continue it to the hearing, exercising the now settled discretion of the court in the matter of dissolving or continuing preliminary injunctions, (*Poor vs. Carlton*, 3 *Sumn.*, 73), and considering that no injustice will thus be done to the defendant, since he stands secured by the injunction bond. It is inconvenient and undesirable to try these motions upon affidavits or depositions taken under our new Rule. In a case proper for affidavits, under the English practice it is preferable, and, I think, more in accordance with American practice,

Hearing on motion to dissolve.

simply to let the injunction stand until the hearing. I can think of only one case in which it would be necessary to resort to affidavits. That is, where either to dissolve, or to continue the injunction would work irreparable mischief, and, therefore, a prompt decision becomes essential, as in the case of an injunction, to terminate a business or a partnership.

. Tuesday, May 11th, is appointed to hear the motion.

On May 12th, 1869, instead of the day appointed, the motion to dissolve the injunction was heard. It proceeded upon two grounds :

(1.) Upon the denial by answer of the equity of the bill.

(2.) For want of equity in the bill.

*Smithers*, for the defendant.

*First*. Consider the effect of the answer upon this motion, under our new rule, whether it is to be treated as pleading only, or as evidence,

By 15 and 16 *Vict.* the answer is now made an affidavit only ; previously it was taken to be true. 3 *Dan. Ch. Pr.*, 1768. Such is the general practice unaffected by special rules. *Manchester vs. Day,* 6 *Paige,* 295 ; construing *N. Y. Rules* 37 *and* 38 ; *Hubbard vs. Mobray,* 20 *Md. Rep.,* 165, construing 1 *Md. Code,* 92, *Sec.* 103 ; *Perkins vs. Hallowell,* 5 *Ired. Eq.,* 26 ; *Capehart vs. Mhoon, Busbee's Eq.,* 31 ; *Brothers vs. Harrill,* 2 *Jones' Eq.,* 210. Our own Rule 23 is explicit that the answer is not to be "evidence at the hearing," but on motions to dissolve "with the same effect as heretofore," expressly restraining the ancient practice, which was in Delaware settled in acord-

ance with the rule as stated. Chancellor Ridgely in *Lockwood vs. Mitchell, and Dukes, unreported.**

*Second.* The equity of the bill is insufficient, either as against the answer, or alone. There are four grounds of equity suggested.

1. Complainant's sickness at the trial, which was not made the ground of any application for postponement.

2. The amendment allowing increased damages, which was matter exclusively for the discretion of the court of law.

3. That complainant has receipts not produced. This alleged defense is flatly denied by the answer, but assuming that the receipts were *bona fide*, the excuse for non-production was, that a letter was mailed to the complainant's attorney and not received. The suit having been pending two years, the failure to produce the receipts at the trial, involved gross negligence, which is a fatal objection to the complainant's case shewn upon the bill. *Adams Eq.*, 434; 3 *Dan. Ch. Pr.*, 1723-7, *(Ed'n of* 1865); *Creath vs. Sims*, 5 *How. S. C.*, 204; *Sample vs. Barnes*, 14, *How.*, 70; *Smith and Mead vs. Lowery*, 1 *Johns. Ch.*, 320; *Curtis vs. Smallridge*, 2 *Freem.*, 178; *Woodworth vs. Van Buskirk*, 1 *Johns. Ch.*, 432; *Bateman vs. Willoe*, 1 *Sch. and Lef.*, 201; *Deaves vs. Erwin*, 7 *Ired. Eq.*, 250; *Hunt vs. Coachman and Easterly*, 6 *Rich. Eq.*, 286; *Champion vs. Miller*, 2 *Jones' Eq.*, 194; *Pemberton vs. Kirk*, 4 *Ired. Eq.*, 180; *Stockton vs. Briggs*, 5 *Jones' Eq.*, 309; *Borland vs. Thornton*, 12 *Cal.*, 440.

4. The alleged after-discovered evidence is not of such a nature as to support the application to equity. It should

*This case is referred to as in Chancellor Ridgely's notes, Mss. Vol. 3, p. 560, but does not appear among the cases reported in Del. Ch. Rep.

be original,—not cumulative,—and conclusive. The new testimony suggested here is not an answer at all, much less, conclusive. Again, after-discovered testimony is not sufficient, which, by due diligence could have have been obtained, certainly not if there were negligence, which, clearly, there was. *Smith vs. Lowery*, 1 *Johns. Ch.*, 320; *Tovey vs. Young, Prec. in Ch.*, 193; *Burgess vs. Lovengood*, 2 *Jones' Eq.*, 460; *Taliaferro vs. Bank of Montgomery*, 23 *Ala.*, 756; *McGrew vs. Tombeckbee Bank*, 5 *Porter*, 554; *French vs. Garner*, 7 *Porter*, 553; *Knox vs. Work*, 2 *Binn.*, 582.

*E. Saulsbury* and *Hillyard*, for the complainant.

As to the effect of the answer, we think this case within the principle of irreparable damage, such that the Chancellor will not hold the answer conclusive. *Poor vs. Carleton*, 3 *Sumn.*, 75. The authorities cited in support of the general rule on the other side, all recognize such exceptions as that which we claim the benefit of. But, beyond this, it lies in the discretion of the Court, free from any iron rule, to continue the injunction, if, upon all the facts, the justice of the case so requires. The question of continuing or dissolving is to be determined by the whole case made on the record, not upon the answer only, but upon bill and answer both. *Adams Eq.*, 732, *note*; *Harrison Ch'y.*, 189, 190; *Irich vs. Black*, 2 *C. E. Green (N. J.) Eq.*, 189; *Chetwood vs. Brittan*, 1 *Greens Ch.*, 438; *Roberts vs. Anderson*, 2 *Johns. Ch.*, 202; *Humphreys vs. Leggett*, 9 *How.*, 313.

The bill alleges that we have proof of certain admissions by the defendant. The answer denies that he made the admissions, not that we have after-discovered testimony, which is the equity of the bill. The truth or falsity of such testimony we ought to be able to submit to a jury.

42

The admissions are not cumulative, and would have exonerated the defendant if proved upon the trial, and the subsequent discovery of such evidence is a cogent reason for continuing the injunction. *Jarvis vs. Chandler,* 1 *Tur. & Rus.* 319; *Iglehart vs. Mayer,* 4 *Md. Ch. Dec.,* 514.

This answer is not full as is required. Upon motion to dismiss and even as to facts not within the knowledge of defendant, then should be a denial upon information and belief. *Sto. Eq. Pl., sec.* 584-5; 2 *Dan. Ch. Pr.,.* 256-7; *King vs. Ray,* 11 *Paige,* 237-8; *Morris vs. Parker,* 3 *Johns. Ch.,* 297; *Brooks vs. Byam,* 1 *Story,* 297.

There is sufficient equity in the bill. This question is to be considered, solely in view of the bill, as upon a demurrer, disregarding any denials by answer. For to consider the equity of the bill, in view of the answer, is, in effect, to dissolve upon answer.

Relief in equity, after a judgment at law, is frequently afforded in cases like the present one, where, after a trial, receipts or admissions have been discovered, which would have affected the right to recover at law. *Humphrey vs. Peyton,* 2 *Vern.,* 436; *Coddrington vs. Webb,* 2 *Vern.,* 240; *Edwin vs. Thomas,* 1 *Vern.,* 489; *Wharton vs. Tilly Mil',* 2 *Vern.,* 428; *Gainsborough vs. Gifford,* 2 *P. Wms.,* 424; *Protheroe vs. Forman,* 2 *Swanst.,* 239; *Hankey vs. Vernon,* 2 *Cox,* 11; *Jarvis vs. Chandler,* 1 *Turn. & Russ.* 319; *Farquharson vs. Pitcher,* 2 *Russ.,* 81; *Ocean Ins. Co. vs. Fields,* 2 *Sto.,* 72, 76, 78; *Bell vs. Cunningham,* 1 *Sumn.,* 89, 103; *Ins. Co. of Alexandria vs. Hodgson,* 7 *Cranch,* 332.

There can be no neglect in not producing evidence of which complainant knew nothing, and he had no reason to suspect its existence. Nor could he have had relief by bill of discovery, for he could not be expected to inquire as to facts of whose existence he had no knowledge. *Clifton vs. Livor,* 24 *Ga.,* 91; *Iglehart vs. Lee,* 4 *Md. Ch.,*

*Dec.,* 514 ; *Knifong vs. Hendricks,* 2 *Gratton,* 212 ; 2 *Sto. Eq. Jur.* 79, *n* (3) ; *Dunham vs. Douner,* 31 *Vt.,* 256.

In the cases where relief has been refused the equity was not equal to that of this bill, and even in those the principle we contend for was recognized. *Curtis vs. Smallwood, Eq. Cas. Abr.,* 377 ; *Barbone vs. Brent,* 1 *Vern.,* 175 ; *Barker vs. Holder,* 1 *Vern..* 316 ; *Blynnan vs. Brown,* 2 *Vern.,* 231 ; *Tilly Mil. vs. Wharton,* 2 *Vern.,* 378 ; *Tovey vs. Young,* 2 *Vern.,* 436 ; *Williams vs. Lee,* 2 *Atk.,* 223 ; *Richards vs. Synes,* 2 *Atk.* 218 ; *Marriot vs. Hampton,* 7 *D. & E.* 269 ; *Protheroe vs. Forman,* 2 *Swanst.,* 239 ; *Harrison vs. Nettleship,* 2 *Myl.* 1 *Keene,* 423 ; *Field vs. Beaumont.* 1 *Swanst,* 207 ; *Lansing vs. Eddy,* 1 *Johns. Ch.,* 49 ; *Simpson vs. Hart,* 1 *Johns. Ch.,* 91 ; *Smith vs. Lowry, Johns. Ch.,* 320 ; *Woodworth vs. Van Buskirk,* 1 *Johns. Ch.,* 432 ; *Barker vs. Elkins,* 1 *Johns. Ch.,* 465 ; *Dodge vs. Strong,* 2 *Johns. Ch.,* 228 ; *Duncan vs. Lyon,* 3 *Johns. Ch.,* 351 ; *Floyd vs. Jayne,* 6 *Johns. Ch.,* 479 ; *Carrington vs. Holabird* 17 *Conn.* 534-537.

A bill for a new trial of a case at law will lie for the same ground as would support a bill of review, of a case heard in equity, on the discovery of new matter. *Dunham vs. Douner,* 31 *Vt.,*256-7 ; *Murray vs. Graham,* 6 *Paige,* 622 ; *Fletcher vs. Warren,* 18 *Vt.,* 46 ; *Truly vs. Wanzer,* 4 *Howard S. C.,*142 ; *Humphrey vs. Leggett,* 9 *How., S. C.,* 311 ; 2 *Sto. Eq. Jur. sec.* 888. *Mitford's Eq. by Jeremy,* 131 ; *Sto. Eq. Pl. secs.* 412-16 ; *Floyd vs. Jayne,* 9 *Johns. Ch.,* 471 ; *Woodworth vs. Van Buskirk,* 1 *Johns. Ch.,* 432 ; *Dexter vs. Arnold,* 5 *Mason,* 309 ; *Portsmouth vs. Effingham,* 1 *Ves. Sr.,*430 ; *Bennet vs. Lee,* 2 *Ath.,* 528 ; *Napier vs. Effingham,* 2 *P. Wms.,* 401 ; *Norris vs. Le Neve,* 3 *Atk.* 34 ; *Young vs. Keighly,* 16 *Ves.,* 348 ; *Wiser vs. Blackly,* 2 *Johns. Ch.,* 492 ; *Livingston vs. Hubbs,* 3 *Johns. Ch.,* 124 ; *Taylor vs. Sharp,* 3 *P. W.,* 371 ; *Gould vs. Tancred,* 2 *Atk.* 534 ; *Lewellen vs. Mackworth,* 2 *Atk.,* 40.

THE CHANCELLOR :

This bill impeaches the justice of a judgment re-
covered by the defendant in the Superior Court, and it
seeks to have the collection of the judgment restrained
by this Court until the defendant shall submit to a new
trial at law.

That this Court has the jurisdiction invoked is un-
questioned. But it is one which from the pressure of
hardship, always an element in these cases, is liable to
abuse ; and the abuse of it is extremely mischievous,
tending as it does, to a conflict between different jurisdic-
tions, and to the promotion of needless litigation. This
Court, therefore, in relieving against judgments at law
upon grounds impeaching their justice, has always acted
cautiously, and held itself within strict limits. What these
limits are I have been at pains to ascertain, and with that
view have carefully read up, and considered the whole
course of decisions on this subject.

Chancellor Kent dealt with these applications more
frequently, and with more thoroughness than any other
judge. Not less than six such cases are reported in first
three volumes of Johnson's Chancery Reports ;—*Smith vs.*
*Lowery*, 1 *Johns. Ch. Reports,* 320 ; *Simpson vs. Hart,* 2
*Johns. Ch. R.,* 95 ; *Woodworth vs. Van Buskirk Ib.,* 432 ;
*Barker vs. Elkins, Ib.,* 436 ; *Dodge vs. Strong,* 2 *Ib.,* 228 ;
*Duncan vs. Lyon,* 3 *Ib.,* 351. The result of his investigations
the learned Chancellor sums up in last of these cases,
*Duncan vs. Lyon,* 3 *Johns Ch. R.,* 351 ;—"It is" said he, "a
"settled principle, that a party will not be aided in equity
"after a trial at law unless he can impeach the justice of
"the verdict or report, by facts, or on grounds of which he
"could not have availed himself, or was prevented from
"doing it by fraud or accident, or act of the opposite party
"unmixed with negligence or fault on his part ." And he
adds, emphatically," this point has been so often ruled that

"it cannot be necessary or expedient to discuss it again, "and it is one by which I mean to continue to be gov- "erned." Another great authority, Ch. J. Marshall, in *Marine Insurance Co. of Alexandria, vs. Hodgson,* 7 *Cranch* 332, had previously announced the rule in substantially the same terms. He said—" without attempting to draw "any precise line, to which Courts of equity will advance "and which they cannot pass, in restraining parties from "availing themselves of judgments obtained at law, it may "safely be said that any fact which clearly proves it "to be, against conscience, to execute a judgment, and "of which, the injured party could not have availed "himself in a Court of law, or of which he might have "availed himself at law but was prevented by fraud or "accident, unmixed with any fault or negligence in himself "or his agents, will justify an application to a Court of Chan- "cery. On the other hand it may, with equal safety, be laid "down as a general rule that a defense cannot be set up in "equity which has been fully and fairly tried at law, al- "though it may be the opinion of that Court that the defense "ought to have been sustained at law. " The precise limit "fixed by the rule, as announced by Ch. J. Marshall, are still "more clearly indicated in the application, he then proceeds "to make of it, to the case before him. He says, " In the "case under consideration, the plaintiffs ask the aid of "this Court to relieve them from a judgment on account "of a defense which, if good anywhere, was good at law, "and which they were not prevented by the act of the "defendants or by any pure and unmixed accident from "making at law." Now, whatever of strictness there may be in the rule as thus limited, it is by no means new. As far back as 1802 in *Bateman vs. Willoe,* 1 *Sch. and Lef.* 205, Lord Redesdale, among the most eminent of judges, both for learning and sound judgment, treating the subject with remarkable vigor, thus defines this jurisdiction : "There may be," he says, "cases cognizable at law and also "in equity, and of which cognizance cannot be effectually

" taken at law, and therefore equity does sometimes inter-
"fere, as in case of complicated accounts, where the party
"had not made defence because it is impossible for him to
"it effectually at law ; so where a verdict has been obtained
" by fraud, or where the party has possessed himself
" improperly of something, by means of which he has an
" unconscientious advantage at law, which equity will
" either put out of the way or restrain him from using;
" but, without circumstances of that kind, I do not know
"that equity does interfere to grant a trial of a matter
"which has already been discussed in a court of law, a
"matter capable of being discussed there, and over which
" the court of law had full jurisdiction."

These may be taken as authoritative and accurate
statements of the general rule which governs this Court
upon application for a new trial of actions at law. More
particularly stated, the effect of the rule will appear in
two points.

1. If a party has an equitable defense, one not cog-
nizable at law, of which, therefore, as stated by Chancellor
Kent and C. J. Marshall, he could not avail himself at law,
and consequently has suffered judgment, equity will always
relieve against the judgment, not however by compelling a
new trial at law, but by dealing with the subject as one
of its own original jurisdiction. This involves no conflict
of the two jurisdictions—for each Court, though acting
upon the same subject-matter, and to contrary results,
deals with distinct rights or relations of the parties, the
one with those which are legal, the other with those which
are equitable. Two of the cases cited for the complainant
are of this class. *Farquharson vs. Pitcher*, 2 *Russ.*, 81,
*and Dunham vs. Douner*, 31 *Vt.*, 249. In the former case,
in the suit at law, a defendant failed to obtain credit in an
account with the plaintiff for certain sums, collected by
the plaintiff, upon a claim, of which the defendant had made

a legal assignment to a third person, reserving, however a trust to himself. The court of law, not recognizing the trust, but giving effect to the legal assignment, disallowed the credit ; equity, upon a bill, enforced the trust. So in the Vermont case, two sureties, defendants in an action at law, set up, in their defense, an extention of credit given by the creditor to the principal. This defense was overruled and judgment went·against them. Equity relieved by a perpetual injunction, protecting what were the equitable rights of the sureties, as a subject of its own original jurisdiction.

In the case before us, whatever defense the complainant had against the action at law, was purely legal.

2. Then, with respect to grounds of defense or evidence which were cognizable at law, but not used at the trial, it must appear, to warrant the interference of this Court against the judgment, that the complainant, *i. e.*, the defendant at law, was prevented from availing himself of such grounds of defense or evidence, either by fraud or surprise, or by what, in the sense of courts of equity, is termed accident, and without any neglect or default on the part of himself or his agents. In other words, the ground of relief is something connected with the trial already had, which renders the verdict an unconscientious one, as where the case of the adversary was based upon some concealed fraud which was only developed by the trial, and could not then be met, or where the party was surprised by a claim he had no reason to anticipate and could not be prepared for, or where some decisive ground of defense or evidence has since been discovered, which he could not by any reasonable diligence have known, and which, therefore, presents a case of accident, as if an administrator after trial discovers a receipt, which, not being the party to whom the receipt was given, he was in no default in not having known and found before. Such grounds for new trials as these are allowed at law where

they are disclosed in time for application, to be then made, and hence, upon such grounds, if there has been no opportunity to apply at law, equity may well relieve, because its interference is in aid of the jurisdiction at law, and consistent with it.  But, on the other hand, where, as in ordinary cases, there has been a fair trial at law, neither party having been subjected to an unconscientious disadvantage through fraud, surprise or uncontrollable accident, but, as is not at all infrequent, the result of the trial has disclosed to a party the lack of some advantage he might have used, or has put him on the track of some additional evidence not before known, and which, by reasonable diligence he might have discovered, equity will not relieve. Now great injustice may sometimes result from the severity of these rules, but, as was forcibly said by Lord Redesdale, in *Bateman vs. Willoe,* "it is more important "that an end shall be put to litigation, than that justice "should be done in every case," an object indeed, which is wholly unattainable, for as he further remarks, "owing "to the inattention of parties and other causes, exact "justice can very seldom be done."

Now, as to authority, the prevailing current of decisions from the beginning has run with the distinction taken by Lord Redesdale, C. J. Marshall, and Chancellor Kent, between unconscientious verdicts resulting from some fraud, surprise or accident, unmixed with neglect in the party on the one hand, and the ordinary cases of after-discovered, additional evidence elicited by the trial, but not previously beyond the actual power of the party, on the other hand.  This distinction was observed even by the earlier decisions at a period when courts of law were less liberal than now in granting new trials.  The earliest case is *Curtis vs. Smallwood,* 1 *Car. II, in* 2 *Freem.* 178, 1 *Ch., Cas.,* 43 and *Eq. Cas., Abr.,* 377.  A husband had recovered in trover, for goods pawned by his wife. The defendant at law filed his bill alleging that the pawning was by the

husband's consent, and that he received the money. Relief was refused "because" the Court say, "it doth not appear that *by any accident* the defendant was hindered of his witnesses at the Court." In *Barbour vs. Brent*, decided in 1683, 1 *Vern.*, 175, the Lord Keeper, after a verdict, refused relief against a judgment at law sought by the bill on the ground that there were receipts for part of the demand recovered, which had been lost. The annotator upon this case thus puts the rule as derived from all the earlier decisions which are collected in the same note. Speaking of two grounds of equity, viz : Changing the venue and *relief against a verdict*, he says, "in both, the "Court acts with great circumspection, and only where "the application is founded on clear fraud, partiality, "corruption, perjury in the witnesses, or new evidence "discovered which *could not possibly be made use of in the* "*first,—i. e.*, would not have been cognizable if then "offered. Proceeding upon the same distinction were the "other older cases, which have been cited for the com- "plainant. In *Hennell vs. Kelland (28 Car. II) Eq. Cas.*, "*Abr.*, 377, a new trial was granted to *an administrator* "on the ground of a receipt found after trial, which was a "case clearly within the principle of accident." It may be added in this connection, that in no instance has a party been allowed a new trial upon the finding of a receipt given to *himself.* It is true, Sir Jos. Jekyll, speaking *obiter* in 2 *P. Williams*, 425, thought a party finding, after a trial at law, a receipt to himself, might be relieved in equity, but this *dictum* was disapproved by Lord Eldon in *Protheroe vs. Forman*, 2 *Swanst.*, 244, upon the perfectly clear ground that the party necessarily having knowledge of a payment made by himself, might, upon loss of the receipt, have filed a bill of discovery, (Lord Hardwicke in *Williams vs. Lee*, 3 *Atk*, 223,) and was in laches for omitting to do so. Another of the cases cited for complainant was *Codington vs. Webb*, in 1691, 2 *Vern.*, 240. A new trial was granted. It is said in the report, that the bond on

Opinion :—review of the authorities concluded.

which judgment had been recovered was *forged* and that by *surprise* the plaintiff at law had recovered, all the pretended witnesses to the bond being dead. In *Humphreys vs. Peyton* and *Jones vs. Hankey*, both cited in 2 *Vern.*, 436, no facts whatever are stated. *Tilly Mil' vs. Wharton*, in 1700, 2 *Vern.*, 378 and 419, was the case of a verdict obtained on a *forged* bond. The Ld. Keeper, Wright, went so far as to refuse relief unless the defendant at law could shew a conviction of forgery or a confession, but on appeal, the House of Lords granted a new trial and, in the result, the bond proved to have been forged. This was the case of a verdict recovered by fraud, and within the rule, as before stated. *Gainsboro vs. Gifford*, 2 *P. Wms*, 424, cited for complainant, did not arise upon a bill filed for a new trial. The plaintiff at law sued upon a breach of contract by the Countess of Gainsboro, to transfer certain shares of stock, and recover the value, and the Countess paid the judgment. It turned out that the plaintiff, being the Countess' broker, had sold part of these very shares and realized the proceeds. The bill was then filed by the Countess, for discovery, and to recover these proceds, as money realized from her stock and clearly receipted to her use, and upon defendant's confession, by answer, the Court so decreed. There is nothing in the case that touches the practice of this Court in compelling a new trial at law, except the dictum of Sir Jos. Jekyll before referred to.

These are all the early cases. They practically established, for this jurisdiction, the ground and limits which afterward, in *Bateman vs. Willoe*, Lord Redesdale defined, by a rule, the same rule adopted by Chancellor Kent, and C. J. Marshall, and observed with very few exceptions by all the modern decisions in England, and in this country. *Adams Eq.*, [197] ; *Protheroe vs. Forman*, 2 *Swanst.*, 238 ; *Harrison vs. Nettleship*, 2 *M. & K.*, 423 ; *Taylor vs. Sheppard*, 1 *Y. & C.*, 271 ; *Smith vs. Lowry*, 1 *Johns. Ch.*, 321 ;

*Barker vs. Elkins, Ib.,* 465 ; *Dodge vs. Strong,* 2 *Johns. Ch.,* 228 ; *Duncan vs. Lyon,* 3 *Johns. Ch.,* 356 ; *Marine Ins. Co., of Alexandria vs. Hodgson,* 7 *Cranch,* 332 ; *Deaver vs. Erwin,* 5 *Iredell's Eq.,* 250 ; *Stockton vs. Briggs,* 5 *Jones' Eq.,* 309 ; *Hunt vs. Coachman,* 6 *Rich. Eq.,* 286.

Now proceed to apply these principles to the case before us. Taking the case presented upon the face of the bill, as if the question were raised upon demurrer, or motion to dismiss solely for want of equity in the bill and without answer, I am of opinion it is not one for equitable relief. The objections are these :

1. The complainant lost his case at law through his own neglect only, and not through fraud, surprise or accident, or any controlling necessity. In this point the case is strikingly like *Dodge vs. Strong,* 2 *Johns. Ch.,* 228, and *Champion vs. Miller,* 2 *Jones, Eq.,* 194. According to his bill, the complainant had fully paid Rash's claim and held receipts under Rash's hand covering the whole amount. These, if produced, would have been a full defense. With respect to the receipts, the complainant was in gross laches in several respects. (1.) In their not having been left in the hands of his attorney in the suit. The attorney is the proper custodian of papers necessary to maintain or defend his client's case, and the omission of the complainant, during the entire two years pending of the suit, to deposit these papers with his attorney, before the very eve of trial, at which time they were subject to such risk of his detention, is far short of that diligence which prudent men exercise, and which the law requires. (2.) If we suppose that the complainant was in no default in so long withholding these receipts from his attorney, nor in his absence from the trial, being detained by sickness, still the bill shews that the attorney was apprised of the complainant's sickness and inability to attend the trial, and yet made no application to the Court

for a postponement. The bill states that being sick and unable to attend, complainant procured a certificate from his attending physician to that effect, and duly mailed it to his attorney. The presumption is that the attorney received it. If he had not, the failure to receive it could have been ascertained and alleged. The complainant's statement that, even up to the filing of the bill, he did not know whether or not the letter and certificate had been received by his attorney, strengthens the presumption that they were received ; and it is fully confirmed by the fact that the attorney wrote to him for the receipt, "in ample time," as the bill states. This letter, the bill states, was not received by the complainant until after trial, so that when the case was called, the attorney was left without the means of defense. Now if he was in this position through no default of his client or himself, we must suppose the Court, upon application, would have granted a postponement until the receipts could have been obtained. The case then is this : The attorney, waiving an appeal to that discretion of the Court, to which the situation of his case properly addressed itself, elected to go to trial without the receipts. Then the client must abide the election of his attorney. (3.) Even after the trial, relief might have been obtained by motion for a new trial, yet no such application appears to have been made. I am obliged to treat the case of the complainant, as to these receipts, as one of laches. Consider, then, the effect of this. It is not only to remove the complainant's equity to relief founded upon these receipts, but upon any and all other grounds, also, that might exist. For the loss of the case, through a party's own neglect, goes to his whole title to relief, as well to that founded upon after-discovered testimony, as upon the receipts. This Court cannot allow a party to retrieve a want of diligence fatal to his case, by afterwards hunting up additional evidence. The strong language of the Supreme Court in *Crealtis, adm. vs. Sims* is here pertinent ; " the Court will never be called into

activity to remedy the consequences of laches or neglect, or the want of reasonable diligence." But I have considered the after-discovered testimony as a distinct ground of relief, unaffected by the complainant's neglect to use the more conclusive defense already in his possession. Still this ground encounters a fatal objection : No diligence or effort whatever to discover this, or indeed any testimony is alleged to have been made before the trial, and it does not appear, and in the total absence of effort or inquiry it cannot appear, but that, by due diligence, this testimony might have been seasonably obtained. On the contrary, the very results alleged in the bill, of the quickened diligence of the complainant within a short time after the trial, raise the presumption that as much might have been accomplished by the like diligence, or any reasonable diligence, during the two years while the suit was pending. At least, the Court cannot say that this is such testimony as, under all the circumstances of the case, *could not*, *by reasonable diligence, have been obtained.* This, and not the mere fact of after-discovery, is the ground of relief. In the old case of *Curtis vs. Smallwood*, 2 *Freeman*, 178, where the defendant at law had discovered testimony to prove that the claim was wholly unfounded, the Court say, "it doth not appear 'that by any accident the defendant "was hindered of his witnesses at the trial." Nothing appears but that the defendant at the trial might have produced this evidence, and we will not help his negligence. This principle runs through the whole course of decisions. It is unnecessary to cite authorities to it specially. It may be said that, as to any laches in not seeking proof of payment by the defendant's admission to third persons, he is excused by the consideration that he had in possession sufficient proof in the receipts. But this excuse involves him in still grosser laches, in not using the proof he had. The entire aspect of the case upon this question of diligence as the bill presents it, is this. The complainant had in his possession a full defense. Through neglect,

somewhere, he misses the opportunity to use it. Defeat stimulates him to effort, for the first time, and then he finds some additional testimony, which, equal diligence before, would have either rendered needless, or, if needful, would have brought it to light. The testimony itself is of a species always held to be most unreliable, being declarations of parties coming to the Court at second hand, greatly subject to misunderstanding, if not to misrepresentation. Now the interference of the Court in such cases would encourage neglect, promote litigation and afford temptation to perjury.

I have not found it necessary to consider the objection taken in argument, that the after-discovered testimony is cumulative and inconclusive, and not a ground for relief even had there been no neglect. On that question I express no opinion.

I must now proceed to an allegation of the bill which is directed towards making this a case of perjury and surprise. The statement on this point is that before the trial "it was discovered that" certain unscrupulous persons utterly unworthy of belief, and whose testimony the complainant could have wholly discredited, had he not been wholly disabled by sickness, would swear that a much larger amount was due Rash than was claimed by the narr, ($1500,) and thereupon at the trial term the damages, as laid in the narr, were, under leave of the Court, raised to $3000. Now, if a verdict were obtained by means of perjury which the defendant at law, through surprise or the disability of sickness, was unable to meet, a Court of law would grant a new trial, or, if the perjury were discovered too late for application to a Court of law, equity might well relieve. But for relief on the ground of perjury, the complainant's case upon this bill is defective in two respects. (1.) The allegation is not of any facts or circumstances showing, or even tending to show,

perjury.   It amounts only to the complainant's suspicion, based upon the circumstance that the damages as laid in the narr, were increased by amendment at the trial term. This is a circumstance wholly inconclusive.   To lay a sufficient ground of relief against perjury and surprise, the bill should name the witnesses, and wherein they swore falsely, and set forth facts tending to show that their testimony was false.   But (2) were the allegations sufficient in this respect, still it does not appear that on the ground of perjury and surprise, relief might not have been had at law.   It is not alleged that perjury was discovered too late to enable the complainant to move for a new trial.   On the contrary, the amendment of the narr, which is the only *alleged* ground to suspect it occurred before the trial.

The complainant's counsel, with considerable research, produced many cases of relief in equity against judgments at law—all that could have any bearing upon the questions. All these cases have been carefully read and considered. In two of them, *Farquharson vs. Pitcher*, 2 *Russ.* 81, and *Dunham vs. Douner,* 31 *Vt.*, 249, there were defenses purely equitable and not available at law, forming original grounds of equitable jurisdiction and so dealt with.   In two other of the cases, *Gainsboro vs. Gifford*, 2 *P. Wms.*, 424, before commented on, and *Hankey vs. Vernon*, 2 *Cox*, *C. C.* 11, relief was granted upon the ground of admissions made in the answers of the defendants in equity, a ground itself very questionable, but which at all events does not exist in this case.   Of the remaining cases, *Hennell vs. Kelland, Eq. Cas. Abr.*, 377 ; *Coddrington vs. Webb,* 2 *Vern.*, 240 ; *Tilly Mil' vs. Wharton*, 2 *Vern.*, 378 and 419 ; *Ocean Ins. Co. vs. Field*, 2 *Sto.*, 72 ; *Bell vs. Cunningham*, 1 *Sum.*, 89 and *Iglehart vs. Lee*, 4 *Md. Ch. Dec.*, 514, all proceed upon some such ground as fraud, perjury, surprise or accident, wholly free from neglect in the complainant or his agents.   Now that in the lapse of

one hundred and fifty years past, the courts should, in some instances, under the hardship which these applications often present, have been pressed beyond the strict limitations presented for this jurisdiction, would not be surprising. It is rather surprising that the industry of counsel has discovered only two such cases. One is *Clifton vs. Livor*, 24 *Ga.*, 91. There a defendant to a suit at law to foreclose a mortgage, suffered judgment by default through sickness disabling him from filing an affidavit of defense on the first day of the term. But application for further time was made by his counsel to the court of law and refused. That was certainly an answer to the bill filed for relief in equity. Nevertheless, the court of equity did interfere, but it was the case of a mortgage obtained under circumstances of gross imposition, amounting, in the opinion of the court of equity, to fraud, such as might well have warranted its interposition, had not relief at law been applied for and refused. In that feature, the case violates settled principles, and is a precedent not to be followed. The other is a case decided by a Judge of great authority. *Jarvis vs. Chandler*, 1 *Tur. & Russ.*, 319. After a recovery, in admiralty, of wages for sea service, by a woman, in which the defense taken was that the libellant was a married woman, additional evidence of the marriage was discovered, consisting of admissions by the parties. Lord Eldon granted the injunction, though with much hesitation, and expressing his doubt. It was this case which, in my original examination of the subject upon the application for the preliminary injunction, determined me against refusing it. I am fully satisfied that Lord Eldon's action is not sustainable on the facts as they are reported. The older cases are reviewed in the opinion. The later ones commence with 1788, *Hankey vs. Vernon*, 2 *Cox.* 11, 3 *Bro.*, *C. C.*, 313.

The assignees in bankruptcy of Eliz. Taylor, sued at law her bankers, and recovered a large amount. One

defense in the action at law was, that previous to the act of bankruptcy, which was 2d, May, 1785, Eliz. Taylor had assigned to the bankers, two ships at sea as security for overdrafts by her. The ships had passed into her estate, and the bankers claimed, in the action against them, to deduct their value ; but they failed to prove an assignment, perfected before the bankruptcy, and lost the credit. Afterwards, they applied to the court of law for a new trial on the ground that they could prove that, although the assignment of the ships was not completed before the act 'of bankruptcy, yet that the bankrupt had, before her bankruptcy, deposited with them the bills of sale of the ·ships, and on this ground claimed a lien on that ship. The court of law refused a new trial, but on a bill in equity, · relief was given. The Master of the Rolls puts his decision on the ground that the assignees of the bankrupt who were the defendants in equity, admitted in their answer the deposit of the bill of sale which made an *equitable mortgage of the ship.*

The ground here stands with that of the Countess of Gainsboro, where relief was given upon the ground of a confession of the equity by the answer. Whether either can be supported against the rule that a discovery will not be granted after a judgment of a matter of defense, for which a bill of discovery might have been filed before judgment, is very doubtful ; but at all events the cases are no authority to support the present bill which does not seek relief upon an admission by the answer ; and so far as this bill seeks a new trial, in order to examine additional witnesses, *Hankley vs. Vernon,* is an authority against it. For, the Master of the Rolls says, " A court " of law certainly will not grant a new trial merely to " enable the party to get fresh witnesses to prove his " case ; nor *could this Court* interfere on such a ground ; " it would be a manifest opening to perjury after the party " saw where the shoe pinched."

*Ocean Ins., Co., vs. Field,* 2 *Sto.,* 72, was a clear case of a verdict obtained through fraud. Field had recovered, at law, upon a policy insuring a schooner. After the trial it was discovered that he had himself caused the loss of the schooner by secretly boring holes in her bottom. This was the case of a judgment recovered through a fraud, one of a secret, concealed nature, which the Insurance Company, did not, in fact, know at the trial, and could not be held in any laches for not discovering it. The decision is put upon the ground of fraud, and is clearly within the rule laid down by Lord Redesdale and Chancellor Kent. There are some general observations by Judge Story as to the power of the Court to grant · relief in any strong case of after-discovered testimony, of a direct and positive character. But his remarks are *obiter dicta,* loosely made and of no authority.

*Bell vs. Cuningham,* 1 *Sumn.,* 89, was a case of surprise. It was an action at law, and a recovery against foreigners for the proceeds of certain consignments of sugars. Part of the money recovered was for a claim of which the defendants at law had no knowledge, and, under the circumstances, had no ground to anticipate it, but against which they had a good defense. Judge Story, adverting with approval to the rule announced by C. J. Marshall in the case of *The Marine Insurance Company of Alexandria vs. Hodgson,* treats the case before him, as within that rule, on the ground that it was a case of surprise upon the defendants.

*Iglehart vs. Lee,* 4 *Md. Ch.,* 514, was a case of gross fraud. Iglehart, as Sheriff, had levied on the supposed interest of some minors (of whom Robinson was guardian) in one-third of the crops of a farm of which Lee was tenant. The Sheriff gave Lee an agreement of indemnity, whereupon Lee sold, paid to the Sheriff one-third the proceeds of the crop. Afterwards Robinson sued Lee to recover the rent, in which suit Lee suffered judgment to

go against him without defense, under a fraudulent arrangement that Robinson should enter satisfaction of this judgment, and then, that Lee, for Robinson's use, should sue the Sheriff upon the agreement for indemnity, using this collusive judgment against him as evidence of damages. Iglehart, the Sheriff, at the trial of the action against him, knew nothing of the fraud, nor was he in any laches for not knowing it, as it was a secret between the colluding parties. Upon its discovery, afterwards, equity relieved him.

The present case might have been like these, had there been a sufficient averment of facts shewing that the verdict was obtained through perjury, procured by Rash—I say averment of facts, not of suspicion only.

I therefore conclude to dissolve the injunction for the want of equity in the bill,—not finding it necessary to consider what would be the effect of the answer, supposing a sufficient case for relief had been made by the bill.

Injunction dissolved.