HENRIETTA KURATLE,

*vs.*

SAMUEL C. PYLE.

*New Castle, Aug.* 1, 1919.

Where defendant in an action at law failed to file affidavit of defense, and judgment was obtained against her because her attorney had been misled by the attorney for plaintiff as to the conduct of the proceedings, in defendant's suit in equity for relief against the consequences of such misleading conduct, testimony of defendant's attorney, conducting her suit in equity, who had also represented her in the action at law, as to an agreement with plaintiff's counsel, made in open court, which misled him, is admissible.

Where the attorney for plaintiff in a suit on notes unintentionally deceived the attorney for defendant into thinking that it had been agreed that the case of defendant against plaintiff suing on the notes and the two cases of plaintiff against defendant, or one of them, would be tried together after the latter had been pleaded to issue, the filing of affidavit of demand by plaintiff, and taking judgment for want of affidavit of defense, was a breach of the agreement, and the judgment will not be allowed to stand.

The statutory power given the Superior Court to open a judgment obtained by default and let defendant into a trial, when it appears he had no notice of the action, does not oust the Court of Chancery of jurisdiction of suit to vacate the judgment, where in the conduct of the cause plaintiff misled defendant to the latter's injury; i. e., the taking of a default judgment.

Where there was no denial or explanation of an incident between counsel deceptive to defendant's counsel, the rule of court requiring agreements of counsel to be in writing should not bar defendant, injured by the deceptive conduct, from obtaining appropriate relief in the Court of Chancery.

Where plaintiff, suing on notes, took judgment by default for want of affidavit of defense, his counsel by an oral agreement having deceived defendant's, in defendant's suit to vacate such judgment, decree for defendant should not only vacate the judgment, and perpetually enjoin its enforcement or payment in any manner, but should also decide the merits of the legal action on the notes, one of the issues tried in the suit being whether the notes were valid or fraudulently made, and settle the point in the Court of Chancery.

Under *Rev. Code* 1915, § 4231, a special fee for necessary expert witnesses for complainant, who has secured decree, may be fixed and taxed as part of the costs.

BILL TO VACATE A JUDGMENT in the Superior Court for New Castle County, obtained for want of an affidavit of defense, the grounds being legal fraud on the part of the plaintiff by which the defendant in the action did not make the legal defense there was to the aciton. The cause was heard on bill, amended answer, testimony of witnesses heard orally by the Chancellor and exhibits. The facts are stated in the opinion.

*Herbert H. Ward* and *Leonard E. Wales*, for complainant.

*Daniel O. Hastings*, for defendant.

THE CHANCELLOR. The defendant, Samuel C. Pyle, on March 2, 1918, brought an action of assumpsit in the Superior Court for New Castle County against the complainant, Henrietta Kuratle, and an appearance therein was entered for her by her attorney, Leonard E. Wales, Esq. No affidavit of demand was filed and no declaration was filed at the regular date therefor. On May 3, 1918, another action of assumpsit was brought between the same parties and an appearance therein duly entered for the defendant by the same attorney. It was alleged that soon after the second suit was brought there was a conference between the

attorneys for the parties as to the two suits, and that the attorney for the defendant was led by statements of the attorney for the plaintiff to believe that the second suit was entered inadvertently, and that one or the other of them would be discontinued, or not pressed.

Prior to the bringing of either of these suits the complainant, Henrietta Kuratle, had begun an action of assumpsit in the same court against Pyle for money loaned, and this action was pleaded to issue and duly calendared. It was further alleged that about May 8, 1918, when the causes on the calendar for the May term of the Superior Court were being considered by the court, it was suggested by the attorney for Mrs. Kuratle to the attorney for Pyle in the presence of the court, that her action against Pyle be retired from the calendar until the two suits of Pyle against Mrs. Kuratle, or one of them, be pleaded to issue in order that the three suits might be tried together; believing that this plan was then acquiesced in by the attorney for Pyle, it was so announced to the court, and the suit of Mrs. Kuratle against Pyle was retired from the calendar. Notwithstanding this agreement the attorney for Pyle discontinued the first suit against Mrs. Kuratle, filed in the second suit an affidavit of demand and obtained as of course a judgment against Mrs. Kurtatle for want of an affidavit of defense, the amount of the judgment being ascertained by the Prothonotary to be $13,912.43.

It was alleged that the attorney for Mrs. Kuratle had no knowledge or notice of the filing of the affidavit of demand and the entry of the judgment until after the judgment had been entered in due course. It was claimed in the bill that Mrs.Kuratle had a good defense and her failure to file an affidavit of defense, which would have prevented the entry of the judgment, was due to the above mentioned representations and conduct of the attorney for Pyle, which misled the attorney for Mrs. Kuratle.

The judgment so obtained by Pyle against Mrs. Kuratle was on two promissory notes, one dated September 12, 1914, for $6,160, and the other dated April 5, 1915, for $6,000. For Mrs. Kuratle it was alleged that for several years there were some business transactions between her and Pyle, and that in 1914 and 1915 she had, at his request, signed in blank as to date, amount,

payee and maturity, promissory notes to be used in a way indi-
cated, and that unknown to her he had made an unauthorized use
thereof so that the notes sued on were fraudulent, forged and void.
And further, that he owed her money and she owed him none.

Upon learning that judgment had been entered in the suit
on the notes, a petition was made by her to the Superior Court
praying that the judgment be vacated for the fraud, and that
court declined to hear or grant the petition.

The prayers of the bill were for cancellation of the notes and
a vacation of the judgment.

By his amended answer the defendant makes no explanations
as to the charges of deception contained in the bill, but denies
that there was a just and legal defense to his action against Mrs.
Kuratle. The defendant was not called as a witness in the cause,
nor any explanation made as to why he was not called.

Mrs. Kuratle, as a witness in her own behalf, proved that
the two notes sued on were signed in blank as to date, amount,
payee and time of maturity, and that she did not know of or
authorize them to be filled out and used by Pyle, and that she
did not then, or now, owe him money, and that they were fraudu-
lently filled in. Her signature to the notes was admitted by her.
The notes having been filed in the cause by the complainant, or
delivered to her, they were inspected by two experts on handwrit-
ing, ink, etc., who testified in the cause. The expert witness for
the complainant established that the handwriting in the body of
the notes was that of the defendant, Pyle, and this was not dis-
puted by his counsel. The experts disagreed as to the time when
the writing on the blank places in the notes was probably made.
Their respective conclusions were based on tests of the ink and
other physical manifestations of the papers. Notwithstanding
these differences, it was made clear that the notes were filled in
by Pyle without the authority or knowledge of Mrs. Kuratle, the
maker, and that they were fraudulently made, and as between
the maker and payee were subject to be declared void. And
further, that she was not indebted to him.

To prove the matters by which the attorney for Mrs. Kuratle
was misled and so failed to make a defense, her attorney, who was
also one of the solicitors for the complainant in this court and

participated actively in the preparation and trial thereof, was called as a witness for his client. Objection was made to his competency as a witness. The misleading matter had two aspects. One such matter was the conversation between the attorneys for the parties after the second suit against Mrs. Kuratle had been brought by Pyle, the result of which interview being that the attorney for Mrs. Kuratle understood that it was brought inadvertently and would be discontinued. The other matter was the conference of the attorneys in the presence of the court as to the three suits, wherein it was agreed that after the two suits of Pyle against Mrs. Kuratle, or one of them, should be pleaded to issue, they and the suit of Mrs. Kuratle against Pyle should be tried together.

When the general objection to the competency of Mr. Wales to testify for the complainant was made it was overruled and his testimony on both points taken subject to an exception, and to be stricken out if at the argument of the cause the Chancellor determined it to be inadmissible. At the final argument the objection was not pressed, though the exception remains.

The courts of Delaware have not declared an attorney representing a party in a pending cause to be incompetent to testify in another cause in another court as to oral agreements between counsel in the first suit as to the conduct thereof. Certainly if a party in a legal proceeding fails to defend it because his attorney has been misled by the attorney for the adversary respecting the conduct of the proceeding, and seeks in a court of equity relief against the consequence of such misleading conduct, then the strictest rule of public policy should not be applied to exclude in the equity court the testimony of counsel. Chief Justice Pennewill in *Real Estate Trust Co. v. Wilmington, etc., Co.*, 9 *Del. Ch.* 99, 106-111, 77 *Atl.* 828, relaxed the rule and permitted an attorney in that cause to testify as to the giving by him to the adverse party of a written notice, the giving of the notice being material to support the case of the client of the witness, and the witness being the only person representing the party who had personal knowledge of the giving of the notice.

Even if it be so unwise and against public policy to have admitted the attorney for the complainant to testify as to the communication between him and the attorney for the adversary,

not made in the presence of the court, the same reasons do not apply to agreements of counsel made in open court with respect to the conduct of the case there pending. If in open court the representative of a party agree with his adversary that certain legal steps in the cause be taken and the agreement be disregarded and injury results to the adversary, then when seeking elsewhere relief from such injury the counsel for the injured one should be allowed to testify to the agreement. If the other side deny, explain, or vary the facts, a different situation might be presented.

While conscious of treading on dangerous ground, I believe it not unwise to have permitted the attorney for Mrs. Kuratle to testify as to what took place in the Superior Court when the case of Mrs. Kuratle against Pyle was taken from the calendar. Being in doubt as to the competency of Mr. Wales to testify as to the prior agreements of counsel, I have in reaching a conclusion as to the misleading matter disregarded the latter and based my conclusions solely on what took place in the presence of the Superior Court. Each such case of misunderstanding must be judged by the peculiar situation surrounding it. In the case before this court there is no dispute as to the facts.

After careful consideration of the testimony as to what transpired in the Superior Court when the case of Mrs. Kuratle against Pyle was taken from the calendar, I am clear that the attorney for Mrs. Kuratle believed, and was reasonably entitled to believe, that it had been agreed between him and the attorney for Pyle that the case of Mrs. Kuratle against Pyle and the two cases of Pyle against Mrs. Kuratle, or one of them, would be tried together after the latter had been pleaded to issue, and that the filing of the affidavit of demand and taking of judgment for want of an affidavit of defense was a breach of that agreement. There was, then, a deception which, though unintentional, constituted legal fraud or surprise, and at least such a situation was created thereby that it was unfair and inequitable to allow the judgment to stand.

It being shown, then, that in the action at law wherein the judgment in question was obtained the attorney for the defendant failed to make a defense which there was to the action because her attorney had been misled by conduct of the attorney for the plaintiff in the action, and it being shown also that there was a

complete defense to the action, the question is raised as to the jurisdiction of the court to vacate the judgment. There is, however, no doubt on this subject. The cause for vacating the judgment is not that there was a legal or equitable defense to the action, but that it was a matter extrinsic the merits of that cause, viz.: the misleading conduct of the attorney for the plaintiff, whereby the action was not so defended.

In a recent case in the Court of Chancery for Sussex County, *Hudson v. Layton, ante p.* 106, 107 *Atl.* 785, the jurisdiction of this court to vacate a judgment at law was asserted where the defendant failed to defend the action in which judgment was obtained because misled by conduct of the plaintiff in that suit. The general rule was established in *Kersey v. Rash,* 3 *Del. Ch.* 321, and *Woodward v. Arlington, etc., Co.,* 2 *Pennewill,* 188, 44 *Atl.* 620. Among other citations was 6 *Pomeroy on Equity Jurisprudence,* §§ 647-652. The same principle is applicable where a judgment is obtained in violation of a stipulation or agreement as to the conduct of the case. 6 *Pomeroy on Equity Jurisprudence,* §§ 199 and 203, and cases there cited, as well as numerous adjudications cited in the brief of the complainant's counsel. Whether the deceptive conduct be that of a party or counsel, the issue in the Court of Chancery is not that raised in the action at law, but is extrinsic thereto, and when it relates to the conduct of that cause as distinct from the issues therein raised, a court of equity has jurisdiction to right wrongs resulting from such deception. It is also clear that it does not appear that the issues raised in this cause in this court have been decided in the Superior Court, or elsewhere, and hence there is here no foundation for any claim of *res adjudicata.*

So, too, it is equally clear that the statutory power given to the Superior Court to open a judgment obtained by default and let the defendant into a trial when it appears that he had no notice of the action, does not oust this court of juridsiction where in the conduct of the cause one party misleads his adversary to the injury of the latter. The two matters are quite distinct, the Superior Court being authorized to give the statutory relief and a court of equity the equitable relief based on what has been called legal fraud, as distinct from moral fraud.

Where, as here, there is no denial or explanation of the deceptive incident, the rule of court which requires agreements of counsel to be in writing should not bar one injured by the deceptive conduct of the adverse party, or his counsel, from obtaining appropriate relief in this court.

What form of relief should be given to the complainant? When a judgment at law is vacated because obtained by fraud in the conduct thereof, does the decree award the defendant an opportunity to defend in the law court at a new trial there had, or does the Court of Chancery try the legal question? Logically, the former would seem natural, where the defense is a legal one. But the practice may be otherwise. See *Redfield's note to 2 Story's Equity Jurisprudence, p.* 872, § 1577.

In this case, however, there is no doubt that the decree should not only vacate the judgment and perpetually enjoin the enforcement of the payment thereof, in any manner, anywhere and for any purpose, but should also decide the merits of the legal action and not order a trial at law. That action was on promissory notes and the legal question raised in this suit and one of the issues tried was whether the notes were valid, or had been fraudulently made. This issue is settled here, and the notes themselves, as well as the judgment, will be declared void.

In order to grant to the complainant the fullest relief possible the suggestion of her solicitor will be adopted, and in order to relieve her of possible annoyance from the existence of the judgment on the record, the decree will order the defendant, Pyle, to enter on the record thereof a satisfaction, and in default thereof the register of this court will be directed to enter such satisfaction.

The defendant will be ordered to pay all of the costs of the cause. And it appearing that it was reasonably necessary for the complainant to have the testimony of an expert in order to show by whom and when the blanks in the promissory notes were filled in, I will, upon application of the complainant, fix a special fee for the expert witness for the complainant who so testified, and tax it as part of the costs. See *Section* 4231, *Revised Code p.* 1911

NOTE: Upon appeal the decree of the Chancellor was in part affirmed and in part reversed. See *post p.* 372.